# 𝕎𝕙𝕖𝕖𝕝𝕚𝕟𝕘.

RICHARD V. WHELAN *et al. vs.* JOHN REILLY, *et al.*

August Term, 1869.

1. Trusts created by a will, would not be allowed to fail for want of trustees if there was no provision in the will for their appointment, but a court of equity would appoint them.

2. It is competent for trustees to be clothed, by the testator, with power to appoint their successors.

3. The expression "family" in a will is held *prima facie* to mean children, and must be so construed unless some reason appears in the context of the will for extending or altering it. And where the language of the will provides that certain property shall be held in trust, and then proceeds "shall be applied to the support of John" (a son of the testator) "and his family, or such of them as the trustees may think proper, in such manner and at such times as the trustees may think proper, (support in this clause being meant to include education as to the children)," it is apparent that the testator meant children in the use of the word family, and that the will must be construed to read "John and his children;" and the devise is therefore not void for uncertainty and indefiniteness in the devisees.

4. A clause in a will provides that all the estate not thereinbefore disposed of, should constitute a residuary fund and should be invested in bonds. Another clause provides that the income of this fund should be by trustees invested in bonds until the death of the last survivor of three children named, and become part of the residuary fund, unless they should think proper to apply any part of the income to the support and maintenance of any or all of the three children named, or their families, or to the education of their children, or other descendants, but such application to be made only according to the uncontrolled discretion of the trustees. HELD:

   1. That the devise is not void for uncertainty in the beneficiaries.

   2. That it is not void for the discretionary power in the trustees; it being a well settled rule that a discretionary power may be conferred on trustees either by the express terms of the trust or by implication from the nature of the duty imposed on them, whenever the object of the trust is certain.

3. By the death of one of the three children named, of the testator, in the lifetime of the latter, unmarried and without issue, the devise in trust for him lapsed and passed into the residuary fund.

5. A clause in a will provides that the income arising from a residuary fund until the death of the last survivor of three children named, shall be from time to time invested by trustees in bonds and become part of the principal of the residuary fund, unless the trustee shall think proper to apply any part of such income to the support and maintenance of any or all of the three children named, or their families, or to the education of any of their children, or other descendants, but such application was to be at the discretion of the trustees. Another clause provides that after the death of the last survivor of the three children named, the residuary fund shall be held in trust for the children and other descendants then living of said three children named, or such of them as may have a descendant then living, and all such descendants shall have equal shares as among themselves without regard to any difference or degrees of relationship or descent. HELD:

1. The manifest intention of the testator was to vest in the beneficiaries at the time specified the property devised in trust.

2. By the words used the equitable title to the property conveyed in trust will, at the time specified, vest in the beneficiaries, and the legal title will remain in the trustees. But the property will be liable to the control, as also the debts, of the beneficiaries, and it will be the imperative duty of the trustees to convey the legal title to them ; and a court of chancery will compel the trustees to do so on refusal. Therefore, no perpetuity is created by the will.

6. A clause in a will provides that after the death of J., and after some one of his children shall attain the age of twenty-one years, the land in the clause mentioned shall be held in trust for the children of J. in fee simple. A subsequent clause provides that after the death of three children named, the residuary fund shall be held in trust for the children and other descendants then living of said three children named, or such of them as may have a descendant then living, and all such descendants shall have equal shares as among themselves, &c. HELD.

1. That an executory devise of real or personal estate is good if limited to vest within the compass of a life or lives in being and twenty-one years thereafter, adding, for an infant *en ventre sa mere*, sufficient time to cover the ordinary period of gestation. But the limitation to be valid, must be so made that the estate devised or bequeathed not only may, but must necessarily, vest within the prescribed period.

2. The clauses above mentioned do not create a perpetuity in the trustees, and they are therefore valid devises.

Philip Reilly, of Ohio county, died in June, 1866. A

will made by him dated January 15th, 1855, to which was appended a codicil dated March 17th, 1862, was admitted to probate in the recorder's office of Ohio county, on the 10th day of July, 1866.

The following is substantially the will, with such parts omitted as do not appear to be material to a correct understanding of the points involved :

"*First.* I devise to my wife, Jane, in lieu of dower, one undivided half of my mansion house and home farm, during her natural life, the said farm being a tract of land in said county, situated on the Ohio river, at the mouth of Glenn's run, and containing two hundred and eighty acres, more or less.

"*Secondly.* I devise and bequeath to Richard V. Whelan, Henry Moore and Charles W. Russell, of the city of Wheeling, as trustees, all the rest, residue and remainder of my estate, to which I am now entitled, or shall be entitled at the time of my death, wheresoever situated, and whether real or personal, or of what nature or kind soever.

"*Thirdly.* In case of the death of one of said trustees, the two survivors of them shall have power, by writing under their hands or by deed, to appoint another trustee in the room of the deceased, and so from time to time, when one of any three trustees shall die, the two survivors for the time being shall have power in the same manner to appoint another trustee in the room of the deceased ; upon any such death of a trustee, all the estates, rights, powers and duties of the trustees shall survive to the two surviving trustees, and upon the death of one of them (leaving but one surviving trustee) to such survivor ; but upon such appointment being made at any time the trustee so appointed shall thenceforth equally with the two trustees appointing have, and be, invested with and exercise all the estates, rights, powers and duties of the trustees under this will ; my intention is to provide a mode of keeping up the number of three trustees without suspending the execution of the trust, while the number shall be less, and if one trustee shall at any time refuse, disclaim or by deed resign the trust, the

other two shall have power, by like appointment, to appoint another trustee in his stead, in like manner and with like effect as if he were dead.

"*Fourthly.* Such trustees shall have power (which may always be exercised by a majority of them) to sell, lease, convey, manage and dispose of my estate, and every part thereof, and do all other acts in relation thereto, as fully as I could do if I were in life, except so far as the exercise of such general powers would, in any case, defeat a particular intention or provision of this will.

"*Fifthly.* As to so much of my tract of about four hundred acres of land in Marshall county, Virginia, adjoining lands of David McMechen and others as lies within the following boundaries, to wit :   *    *    *    *    *    *
I do direct that until the death of my said son John, and thereafter until one of his children shall have attained to the age of twenty-one years, the same shall be held, leased, managed, used and disposed of by the trustees, at their discretion, and the net proceeds or profits thereof, or so much of such proceeds or profits as the trustees may think proper, shall be applied to the support of said John and his family, or such of them as the trustees may think proper, in such sums, in such manner, and at such times as the trustees may think proper, (support in this clause being meant to include education as to children) and thereafter the same land shall be held in trust for the children of said John heretofore and hereafter born, equally, in fee simple; if all the children of said John die before attaining the said age, then upon the death of the last survivor of such children, and said John, if any of such children leave a descendant, the same land shall be held in trust for the descendants of said John, in fee simple, in such shares as if they inherited the same from him according to the present law of descents in Virginia."

The sixth and seventh clauses were substantially the same as the fifth, except his sons William and Philip were named in like manner as John is mentioned in the fifth.

" *Eighthly.* The three last preceeding clauses shall be so construed that if one child of any of my sons attain the

said age and before that time another child of the same son shall have died leaving a descendant, the descendant or descendants of such deceased shall have the share which the deceased would have had if living.

"*Ninthly.* I desire that the trustees shall sell all the rest of my real estate as soon as they find it expedient, and until sold that they hold, lease, use, manage and dispose of the same at their discretion. I desire them also to convert my personal estate into money as, and when they deem it expedient.

"*Tenthly.* I authorize the trustees at their discretion and election to sell the land in Marshall county, to which the directions in the 6th clause of this will apply (being about three hundred acres) and in that event the directions in that clause shall no longer apply to the same or to the proceeds of such sale thereof, but in lieu thereof, the said directions will apply, with all the limitations, trusts and provisions in that clause contained, to my farm in Ohio county, Virginia, lying east of and near the city of Wheeling, excepting and reserving therefrom however all the coal in or under that farm with proper ways, easements and privileges such as the trustees shall deem sufficient for mining the same and taking it away, and also excepting and reserving all town lots laid off on the said farm. But the trustees shall elect, within two years after my death and not afterwards, whether they will exercise the power of sale given them by this clause, and by their deed acknowledged and lodged for record in Ohio county, Virginia, declare such election and what land (and with what reservations) is to be subject to said sixth clause; but they may exercise such powers of sale at any time afterwards.

"*Eleventhly.* With any moneys arising under this will, and not hereinbefore disposed of, the trustees, as soon as they conveniently can, shall purchase bonds of the State of Virginia to the amount of ten thousand dollars (reckoned at par) bearing interest at the rate of six per cent. per annum and hold the same upon the following trusts: to pay the income thereof to my daughter Mary Jane during her life or

until she shall marry without the consent of a majority of the trustees, and from the time of such marriage, without such consent, to pay her no more than two hundred dollars per annum during her life.    The income so to be paid to her shall be for her sole and separate use, free from the control of any husband, any surplus of such income that may not be payable to her shall be, from time to time, invested in the same manner and go with the principal, and after her death thé said bonds (including any such accumulations of surplus income, shall be held in trust for her children and other descendants living at her death, in such shares as if they inherited the same from her according to the present law of descents in Virginia.

"*Twelfthly.* All the estate of every kind which shall at any time come or belong to the trustees by virtue of this will, or anything done in pursuance of the same and which is not otherwise disposed of in this will, shall constitute a residuary fund.    All moneys being part thereof shall be kept invested, from time to time, as may be found advantageous, in bonds of the State of Virginia, of which the trustees shall receive the income."

" *Thirteenthly.* The income of the said residuary fund, until the death of the last survivor of my three children, William, Philip and Mary Jane, shall also be, from time to time, invested by the trustees in bonds of the State of Virginia, and become part of the principal of the said residuary fund, unless the trustees shall think proper to apply any part of such last mentioned income (which they are hereby authorized to do) to the support and maintenance of any or all of my said three last named children or their families, or to the education of any of their children or other descendants, but such application shall be made only according to the uncontrolled discretion of the trustees.

"*Fourteenthly.* After the death of the last survivor of my three children, William, Philip and Mary Jane, the said residuary fund shall be held in trust for the children and other descendants then living, of any said three last named children, or such of them as may have a descendant then

living and all such descendants shall have equal shares as among themselves, without regard to any differences in degrees of relationship or descent.

"*Fifteenthly.* I give to each of my sons fifty dollars in full discharge of all their claims against me or my estate.

"*Sixteenthly.* The trustees shall have power to fulfill all contracts remaining at my death to be fulfilled by me, or on my part, whether made by me for the sale of land or otherwise.

"*Seventeenthly.* The trustees shall not be responsible for the acts or omissions of each other. They shall respectively receive a reasonable compensation for acting as such trustees.

"*Eighteenthly.* Whenever, in any part of this will, mention is made of "the trustees," that phrase signifies the persons who, at the time or times referred to, shall be the actual trustees under the second or third clause of this will. Every power, choice, discretion, or right of assent, dissent or decision given by this will to the trustees, may be executed or exercised by a majority of the trustees; but where a different sense is particularly expressed, it shall not be controlled by this general clause.

"*Nineteenthly.* Notwithstanding anything hereinbefore contained, I desire to confer on the trustees power to encourage my three children, William, Philip and Mary Jane, to conduct themselves well through life, and with that view do hereby authorize the trustees, whenever and as often as they shall think the same is deserved by the good conduct of my said last named three children, or either of them, to advance and give to them, or either of them, any part or parts of the said residuary fund whether principal or interest, in money or otherwise, without being accountable for the same to any person whomsoever, the power hereby given to dispose of the said residuary fund to or among my said three last named children, or any or either of them, being limited and controlled only by the discretion and judgment of the trustees.

"*Twentieth.* I have made a deed of trust, dated the 28th

day of December, 1854, assigning to the same trustees above named certain stocks, claims, &c., partly for the purpose of raising ten thousand dollars, to be invested substantially in the same manner as directed in the above eleventh clause, (or rather a sum sufficient to purchase bonds of Virginia to that amount.) Now my will is, that to the extent that money shall be realized under said trust applicable to that investment, the same shall be in lieu and reduction of the amount to be invested under said eleventh clause; the purpose of said deed of trust, in that respect, being to provide more effectually for fulfilling my object as expressed in said eleventh clause, and not to provide an additional investment, and any money, property or thing of value belonging or resulting to me, under said deed of trust, after satisfying the trusts thereof, shall be deemed part of my estate, disposed of by this will. But I have not yet actually executed the said deed of trust, though the same has been written, and I reserve the same for consideration; and if I should execute it in a different form, or another, in lieu of it, to provide for said investment, then the deed which I shall actually execute for such purpose shall be deemed the deed of trust first referred to in this clause.

"*Twenty-first.* I appoint Charles W. Russell the executor of this will, and direct that he shall not be required to give any security as such.

"*Twenty-second.* I authorize and require all questions of doubt and controversy arising under this will to be determined, adjudged and finally decided by the trustees.

"*Twenty-third.* It is my will and intention that no husband of my daughter, Mary Jane, shall have any title to, interest in, or control over any property, money, or other thing which she may become entitled to or receive under this will, or through any power given to the trustees.

In testimony whereof, I hereto set my hand and seal, this fifteenth day of January, one thousand eight hundred and fifty-five.          PHILIP REILLY, [SEAL.]"

The codicil provided a few unimportant changes and substituted the name of Alonzo Loring for that of Charles W.

Russell, as trustee, and appointed Richard V. Whelan executor.

John Reilly, Philip Reilly and Mary Jane Reilly, children of the testator, (William died during the lifetime of the testator, unmarried,) filed a bill in the circuit court of Ohio county, in March, 1868, alleging "that the trusts attempted to be created by said will in the real estate of the testator, and in the residuary fund, are each and all indefinite, uncertain, illegal and void for the following, among other reasons, appearing upon said record:

"1st. The several trusts are too indefinite and uncertain as to the *cestui que trust*; who can enforce them?

"2d. The right of the testator to dispose of his property by will is transferred to others whom he appoints to make a will for him.

"3d. The several trusts are created with such unlimited discretionary powers in the trustees as to exempt the property from the debts and charges of the persons for whose use or benefit it is holden.

"4th. The will attempts to pass and tie up the legal title to the property of the testator, to and in persons not incorporated in perpetual succession, to the exclusion of heirs and the chancery powers of the courts.

"5th. The trust is made perpetual for the benefit of some of the descendents of the testator in exclusion of others, whilst the legal title to the property is to remain forever in trust.

"6th. The trustees have such discretionary powers of appointment and distribution that they may select and distribute among several classes of persons as well as among persons of each class.

"7th. The trusts are coupled with an attempt to deprive the *cestui que trust* of their right to appeal to the proper court for redress in case of abuse or misapplication of the trust.

"8th. The trusts are coupled with a clause making the trustees a tribunal to adjudicate and finally determine future controversies and doubts arising thereunder to the exclu-

sion of the proper courts, and whose decision is to be paramount to that of all the courts of the State, and that tribunal to be composed in the future of persons unnamed and unknown to the testator.

"9th. The gifts are made to depend upon the expressed will of the trustees.

"10th. The will with its codicil and the trusts thereunder are impracticable. The powers of the executor and those of the trustees are conflicting and the directions to the trustees are inconsistent and in conflict one with another.

"That the property so attempted to be devised and bequeathed in trust to said trustees, descended at the death of the testator to complainants as his only children and lawful heirs, and they have a right to hold and dispose of all the real estate without hindrance or control upon the part of said trustees, and to receive from the executor the personal estate."

They further represented that the trustees named had not made any record of their acceptance of the trust, and had assumed the control of the property and had sold and conveyed the part mentioned and described as lying in the city of Wheeling, and were endeavoring to sell the part described as containing 150 acres, more or less, and that they were threatening to disturb the complainants in the possession of the parts held by them since their father's death; and that the estate of their father was valued at 150,000 dollars. They asked that Whelan, Moore, Loring, Nolan, and the children of the complainant John Reilly, (Philip and Mary Jane were still unmarried), be made parties defendant, and be required to answer; that the trusts be declared void and the will and codicil be set aside, and the trustees be restrained and perpetually enjoined from selling any property or exercising any control over the estate.

Whelan answered, admitting substantially all the allegations of the bill in matters of statement, but claiming that the manifest intentions of the testator should be carried into effect, inasmuch as they did not contravene or violate any rule of law or equity.

The court below, at the March term, 1868, decreed that the law and equity of the case was with the complainants, that the devises in the will were illegal and void, because they entailed the property in perpetuity to the trustees and their successors beyond the period allowed by law. It adjudged and declared the will to be null and void and discharged the trustees from their powers and duties as such. It also referred the cause to a master commissioner to adjust the accounts of the trustees.

The defendants appealed to this court.

*Wheat* and *Lamb* for the appellants.
*Stanton* and *Faulkner* for the appellees.

MAXWELL, J.    John, Philip and Mary Jane Reilly, the three surviving children of the late Philip Reilly, deceased, filed their bill to set aside the last will and testament of the said Philip Reilly, deceased, which had been, before the bill was filed, admitted to probate as a testamentary paper in the office of the recorder for Ohio county.

The court, on the hearing of the cause, by decree entered, declared the trusts raised in the will illegal and void, because, in the opinion of the court, they entail the property devised in perpetuity to the trustees and their successors beyond the period allowed by law.

The petitioners here, insist that the said decree is manifestly erroneous, and that the devises and bequests in the said will and codicil contained, and the trusts therein contained, are, and each of them is, lawful and valid and should have full force and effect given to them and each of them.

The appellees claim that the trusts created by the will are illegal and void upon three grounds:

1st. Because it creates a body of trustees with perpetual succession, upon whom it casts the legal title of the property.

2d. Because the trusts created by the will are void for indefiniteness and uncertainty.

3d. Because it creates a perpetuity and ties up the property from alienation and use for a longer period than the law permits.

The most convenient order of considering the questions arising upon the record of the cause, is to take them as stated by the appellees. The testator, after providing for his wife, proceeds:

"*Secondly.* I devise and bequeath to Richard V. Whelan, Henry Moore and Charles W. Russell, of the city of Wheeling, as trustees, all the rest, residue and remainder of my estate to which I am now entitled, or shall be entitled at the time of my death, wheresoever situated, and whether real or personal, or of what nature or kind soever."

The codicil substituted Alonzo Loring as trustee in place of Charles W. Russell.

The third clause of the will is as follows:

"In case of the death of one of said trustees the two survivors of them shall have power by writing, under their hands, or by deed, to appoint another trustee in the room of the deceased, and so from time to time, when one of any three trustees shall die, the two survivors for the time being shall have power in the same manner to appoint another trustee in the room of the deceased; upon any such death of a trustee, all the estates, rights, powers and duties of the trustees shall survive to the two surviving trustees, and upon the death of one of them (leaving but one surviving trustee) to such survivor; but upon such appointment being made at any time the trustee so appointed shall thenceforth equally, with the two trustees appointing, have and be invested with and exercise all the estates, rights, powers and duties of the trustees under this will; my intention is to provide a mode of keeping up the number of three trustees without suspending the execution of the trust, while the number shall be less, and if one trustee shall at any time refuse, disclaim, or by deed, resign the trust, the other two shall have power, by like appointment, to appoint another trustee in his stead in like manner, and in like effect, as if he were dead."

It is upon this clause that the appellees ground their first objection to the validity of the will. The trusts created by the will would not be allowed to fail for want of trustees if there was no provision in the will for their appointment, but a court of chancery would appoint them. Hill on Trustees, p. 190.

It is well settled that trustees may be clothed by the testator with power to appoint their successors. The power must be exercised, however, by the number of trustees, and in the manner indicated in the will. Hill on Trustees, p. 175–6–7, &c.; Lewin on Trustees, p. 465–6–7–8–9, &c.; *Attorney General* vs. *Floyer,* 2 Vernon, 748. The trustees then in this case may, at any time, in conformity to the power given in the will, appoint other trustees, and all new trustees, when so appointed, will have the same powers as those appointed by the testator.

The fifth, sixth and seventh clauses of the will are in form the same, each one applying to a different son of the testator.

The fifth is referred to as a sample.

After describing in this clause a certain tract of land in Marshall county, the testator proceeds:

"I do direct that until the death of my said son John, and thereafter, until one of his children shall have attained to the age of twenty-one years, the same shall be held, leased, managed, used and disposed of by the trustees, at their discretion, and the net proceeds or profits thereof, or so much of such proceeds or profits as the trustees may think proper, shall be applied to the support of the said John and his family, or such of them as the trustees may think proper, in such sums, in such manner, and at such times as the trustees may think proper, (support in this clause being meant to include education as to the children), and thereafter the same land shall be held in trust for the children of said John heretofore and hereafter born, equally, in fee simple; if all the children of said John die before attaining the said age, then, upon the death of the last survivor of such children, and said John, if any of such children leave

a descendant, the same land shall be held in trust for the descendants of said John, in fee simple, in such shares as if they inherited the same from him, according to the present law of descents in Virginia."

The second point made by the appellees, that the trusts are void for indefiniteness and uncertainty, is founded on this and the seventh clause; William, the son referred to in the sixth clause, having died unmarried and without issue in the life time of the testator. The certainty or uncertainty of the trust created in this clause will depend upon the meaning of the words "John and his family." If the meaning of the testator cannot be ascertained, the trust is no doubt void for uncertainty, but it is the duty of the court to ascertain the meaning if it be possible.

The word *family* may mean children, wife and children, blood relations, or the members of the domestic circle, according to the connection in which the word is used.

It has been held that family *prima facie* means children, and that such construction ought to be adhered to, unless some reason be found in the context of the will for extending or altering it. *Gregory* vs. *Smith*, 41 En. Chy. Rep., 708.

The language of the will is "shall be applied to the support of said John and his family, or such of them as the trustees may think proper, in such sums, in such manner, and at such times as the trustees may think proper, (support in this clause being meant to include education as to the children)."

It is apparent from the language used that the testator meant children in the use of the word family, and that the will must be construed to mean "John and his children." *Gregory* vs. *Smith*, 41 English Chy. Rep., 708; *Parkinson's Trust*, 40 *Ib.*, 242; *Beales* vs. *Chrisford*, 36 *Ib.*, 592; *Wood* vs. *Wood*, 25 *Ib.*, 65; *White* vs. *Briggs*, 22 *Ib.*, 583; *Woods* vs. *Woods*, 13 *Ib.*, 449; Hill on Trustees, 77; *Hill's ex'rs* vs. *Bowman and others*, 7 Leigh, 650.

The trusts created in the fifth and seventh clauses of the will are not, therefore, void for uncertainty as to the devisees.

The beneficiaries in the residuary clause are as certain as those in the special clauses. In this connection it is insisted th'at the trusts are void for the uncertainty in the discretion given by the will to the trustees.

It is well settled that a discretionary power may be conferred on trustees either by the express terms of the trust or by implication from the nature of the duty imposed on them whenever the object of the trust is certain. Hill on Trustees, 485; *Frazier* vs. *Frazier*, 2 Leigh, 642; *Cochran* vs. *Paris, &c.*, 11 Grat., 348; *Steele* vs. *Livesay, Ib.*, 454; *Robininson* vs. *Allen and others, Ib.*, 785; *Harrison* vs. *Harrison's adm'r*, 2 Grat., 1; *Shearman* vs. *Hicks*, 14 Grat., 96; *Huntington* vs. *Winchell*, 8 Conn. Rep., 45; *Hill's ex'or* vs. *Bowman*, 7 Leigh, 650; *Cowles, &c.*, vs. *Brown, &c.*, 4 Call, 477; *McGaughey's adm'r* vs. *Henry, &c.*, 15 B. Monroe, 383; *Leavitt* vs. *Beirns, et al.*, 21 Conn. Rep., 1.

The objects of the discretionary powers of the trustees, both in the specific and residuary clauses, being certain, the discretionary powers are properly conferred on the trustees.

By the death of William in the lifetime of the testator, the specific devise in trust for the benefit of him and his family, in the sixth clause of the will, lapsed, and by the second and twelfth clauses of the will passed into the residuary fund. *Frazier, &c.*, vs. *Frazier ex'r*, 2 Leigh, 642.

The thirteenth clause of the will provides, that "the income of said residuary fund, until the death of the last survivor of my three children, William, Philip and Mary Jane, shall also be, from time to time, invested by the trustees in bonds of the State of Virginia, and become part of the principal of the said residuary fund, unless the trustees shall think proper to apply any part of such last mentioned income (which they are hereby authorized to do) to the support and maintenance of any or all of my said three last named children or their families, or to the education of any of their children or other descendants, but such application shall be made only according to the uncontrolled discretion of the trustees."

The fourteenth clause provides that, "after the death of the last survivor of my three children, William, Philip and Mary Jane, the said residuary fund shall be held in trust for the children and other descendants then living of my said three last named children, or such of them as may have a descendant then living, and all such descendants shall have equal shares as among themselves without regard to any difference in degrees of relationship or descent."

The appellees claim that these two clauses as to the residuum, and the fifth and seventh clauses as to the property therein mentioned, create a perpetuity, and tie up the property from alienation and use for a longer period than the law permits.

The fifth clause provides that after the death of John, and after some one of his children shall attain the age of twenty-one years, the land in the said clause named shall be held in trust for the said children, in fee simple.

The fourteenth clause provides that, "after the death of the last survivor of my three children, William, Philip and Mary Jane, the said residuary fund shall be held in trust for the children and other descendants," &c.

It is claimed that the language used, does not vest in the persons designed to take at the time specified any title to the property, but that the legal title remains in the trustees after that time, and so creates a perpetuity.

An executory devise, either of real or personal estate, is good if limited to vest within the compass of a life or lives in being and twenty-one years afterwards, adding thereto, however, in case of an infant *en ventre sa mere*, sufficient time to cover the ordinary period of gestation of such child. But the limitation, in order to be valid, must be so made that the estate, or whatever is devised or bequeathed, not only may, but must, necessarily vest within the prescribed period.    It is admitted that the estate devised by the fifth and seventh clauses of the will must vest, if it vests at all, within the prescribed period, and that the estates bequeathed by the residuary clause must vest, if at all, at the death of the survivor of the three persons, John, William and Mary

Jane, but the matter disputed is that by the language used in the will the property will not vest in the beneficiaries at any time, but will remain perpetually in the trustees.

The manifest intention of the testator was to vest in the beneficiaries, at the time specified, the property devised in trust. The only question, therefore, to be determined is, whether by the language used this intention will be carried out.

By the words the equitable title to the property conveyed in trust will, at the time specified, vest in the beneficiaries, and if the trusts had been created by deed instead of by will, the legal title would then vest absolutely in the beneficiaries, under the statute of uses, as it is called, but strange as it may seem, this statute does not apply to trust estates created by will.

By the terms used the legal title will remain in the trustees upon the happening of the events, on which the beneficiaries will take the equitable title, but the property will then be subject to the control and liable to the debts of the beneficiaries, and it will be the imperative duty of the trustees at once to convey the legal title to the property to the beneficiaries, or as they may otherwise direct; and if they should refuse to do so, a court of chancery would compel them to convey at their costs. Hill on Trustees, 278, 279, 316, 317.

The equitable title to the property being vested in the beneficiaries, and the property itself being subject to their control at the time specified, although they may have to resort to a court of equity for its assistance to obtain the legal title, no perpetuity is created by the will.

The decree complained of is therefore erroneous, and ought to be reversed, with costs to the appellants; and this court, proceeding to enter such decree as the court below ought to have rendered, should dismiss the complainant's bill.

The other judges concurred.

DECREE REVERSED.