# · CHARLESTON. ·

THOMAS HARVEY POLLOCK *et als.* v. HOUSE &. HERMANN.

Submitted September 3, 1919.    Decided September 9, 1919.

1. CONTRACTS—*Parties—Joint Contract—Right of Action.*

    At common law the right of action on a contract made with several persons jointly passes on the death of each to the surviving co-obligees. Therefore an action on such a contract must be brought in the name of the survivor or survivors alone, it being error to join as plaintiff with them the personal representative of a deceased co-obligee.   (p. 424).

2. LANDLORD AND TENNANT—*Joint Lease—Action for Rent—Parties.*

    The proper parties plaintiff to an action to recover rent due under a demise of real estate, and unpaid, are the joint lessors, if living, and the survivor or survivors of them if any have in the meantime died, whether before the institution of the action or while it is pending.   (p. 424).

3. TRUSTS—*Successive Trustees—Joint Lease—Action for Rent.*

    But where at the date of the contract one of the joint lessors was acting in a representative capacity as trustee, and later died, and a new trustee was appointed in his stead and clothed with all the "rights, powers, duties and responsibilities" of his predecessor, such substituted trustee possesses legal capacity to sue, and may properly unite as plaintiff with the surviving colessors, not because he was lessor eo nomine, but because he is representative of an estate which was party to the original lease in the name of the former trustee, and which continued in existence despite the nominal change in the representation.   (p. 426).

4. SAME—*Substitution of Trustee—Powers.*

    Equity will not suffer a trust to fail because of a vacancy in the trusteeship, however occasioned, whether by death, resignation or otherwise, but will substitute a trustee to execute the trust, with or without authorization by the instrument creating it, especially where, as in this state, a statute authorizes such substitution.   (p. 424).

5. LANDLORD AND TENANT—*Joint Lease—Action for Rent—Parties.*

Where one of two owners of real estate dies testate and by his will devises his moiety thereof to his cotenant as trustee for the use and benefit of the testator's wife, while she lives, and others, during the minority of the youngest cestui que trust, a condition which still remains, and the cotenant in his own right and as such trustee and his wife unite in a demise of the real estate for a term of years to begin at a later date, and the trustee dies before such date, his wife surviving him, she and the trustee substituted in lieu of such deceased trustee may, as survivors, unite in the prosecution of an action to recover of and from the lessee arrearages of rent accruing within the term. (p. 426).

Case Certified from Circuit Court, Ohio County.

Action by Thomas Harvey Pollock and others against House & Hermann. Demurrer to declaration sustained, and question as to correctness of the ruling certified.

*Reversed and remanded.*

*Frank W. Nesbitt* and *Russell B. Goodwin,* for plaintiffs.

LYNCH, JUDGE:

The defendant, House & Hermann, a corporation, having, for some cause not disclosed, refused to pay rent for the use and enjoyment of real estate, due, according to allegations of the declaration, by the express stipulation of a written contract, plaintiffs brought this action to compel payment, and to their declaration defendant demurred assigning as the only ground of objection misjoinder of plaintiffs. Deeming the challenge sufficient, the circuit court sustained the demurrer and certified the case here to test the correctness of the ruling.

The plaintiffs are Thomas Harvey Pollock and Julius Pollock, Jr., trustees under and executors of the will of Julius Pollock, deceased, Mary A. Pollock, widow of the deceased Julius, and C. H. Merkel, trustee, appointed by the Circuit Court of Ohio County in lieu of Julius Pollock, deceased, to execute the trust created by the will of Mortimer Pollock, each of which wills was duly probated and admitted to record, and the persons named as executuors therein properly qualified to administer the estates thereby

committed to them and to execute the trusts thereby reposed in them.

Mortimer Pollock and Julius Pollock, according to the allegations of the declaration, jointly owned certain real estate located in the city of Wheeling. Mortimer Pollock died testate early in February, 1904. Surviving him were a widow, a daughter and grandchildren, and by his will he devised his moiety interest in the real estate to Julius Pollock in trust during the life of the widow of Mortimer Pollock and the life of his daughter, and until the youngest grandchild shall attain the age of twenty-one years. Such grandchild still remains a minor. He also appointed Julius Pollock to execute the will.

Julius Pollock, as such representative of Mortimer and in his own right, and Mary A. Pollock, his wife, parties of the first part, demised the real estate to defendant for a term of five years from and after the first day of April, 1915, in consideration of the payment to the lessors of fifty thousand dollars, payable in equal quarterly installments, or $2500 for each succeeding quarter of the term. Defendant entered upon, used and occupied the premises as contemplated by the parties to the contract, and for each quarter faithfully performed the covenant respecting the payment of rentals until March 31, 1918; and to recover for the default as of that date and for a like default as of June 30 of the same year, plaintiffs brought this action.

Before the date fixed for the beginning of the term, Julius Pollock died testate leaving surviving him Mary A. Pollock, his wife, and devised his moiety in the demised property to the plaintiffs Thomas Harvey Pollock and Julius Pollock, Jr., whom he also appointed executors of the will, in trust for the benefit of his wife and heirs during her life. And on January 30, 1915, the circuit court substituted the plaintiff C. H. Merkel trustee in lieu of Julius Pollock to administer the trust created by the will of Mortimer Pollock, deceased. Apparently this substitution stands upon the authority of section 5, ch. 132, Code, which also clothes the substituted trustee with all the "rights, power, duties and responsibilities of the trustee named in the deed" creating the

trust. The will of the decedent doubtless answers the description of the instrument embodied in the statute and falls within the scope of its provisions to the same extent as if it was a deed. But whether this construction is a fair deduction from the language used or not, equity will not permit a trust to fail for want of a trustee, and in the absence of a provision in the creative instrument, whatever its character may be, a court of equity will substitute another trustee in his stead whenever necessary to carry into full fruition the purpose intended by the donor. *Whelan* v. *Reilly*, 3 W. Va. 597. So that if a will appoints a trustee for infants and he dies, equity will substitute another in his stead even without authorization by the will itself. *Dunscomb* v. *Dunscomb*, 2 Hen. & Mun. 11.

In ruling upon the sufficiency of the declaration charged to be defective for the cause urged against it, the court found Mary A. Pollock, the widow of Julius, the only plaintiff capable or competent to prosecute the action, because she was the sole surviving lessor when the action was instituted. The order entered embodying the result of the opinion made no disposition of the case other than that indicated by the ruling. The order has no finality rendering it appealable, but it is certifiable to this court pursuant to the provisions of section 1, ch. 135, Code.

In restricting the right to prosecute the action to one of the plaintiffs only, the court, we think, erred, doubtless, inadvertently. Mrs. Pollock, it is true, is the only person joining in the execution of the lease who survives her colessors. But Julius Pollock also joined therein as lessor both in his own right as owner of a moiety in the real estate demised, and as trustee holding in trust the legal title of the other moiety for the use and benefit of the cestuis que trust by virtue of the will of Mortimer Pollock. The death of Julius Pollock after the date of the lease and before the breach thereof did not effect a discontinuance of the trust relation or cause its temporary suspension. It remained existent and intact pending the substitution of another trustee in his stead. There was no disturbance in the continuity of the duties and responsibilities imposed by

the testator's will. Merkel as trustee by virtue of the appointment was clothed with all the powers inhering in Julius Pollock as regards the real estate under the original appointment by the testator. He took up the duties of the trust unperformed at the death of his predecessor, and his appointment antedated defendant's breach of the rental contract. Why was he not fully competent to join with Mary A. Pollock as coplaintiff? The mere fact that his name nowhere appears in the lease as one of the contracting parties is not decisive. The estate committed to Julius Pollock in trust did not cease to exist upon his death. Though Merkel was not then authorized to act in his stead, his appointment as successor and the duties and responsibilities of the office reverted to that date. Though not so eo nomine, Merkel thus became at that date and remained as much a party to the demise as was Julius, so far as concerned the preservation of the rights of the cestuis que trust. Merkel was not named executor of Mortimer Pollock's will, but was vested with the legal title of the testator's moiety in the demised premises and charged with the duty of administering the trust for the personal benefit of those entitled to take benefaction of the testator. The change or difference in the names of the persons vested with such title did not affect the qaulification of Merkel to join in the prosecution of the action to recover rent becoming due after his appointment, or render him incapable to join as coplaintiff. The trust estate was by the undisturbed representation a party to the contract by virtue of which the rent was due and payable. It survived the death of the trustee named in Mortimer Pollock's will to the same extent and with like effect as did the right of Mary A. Pollock to join in the action. Both were parties to the lease in a justifiable sense, one no more or less than the other, and for that reason both are competent to join in an action to recover for any breach of the lease contract. Such joinder does not fall within the rule forbidding the uniting in a declaration in the same action a representative of a decedent's personal estate and a surviving co-obligee. Merkel had nothing whatsoever to do with the personal estate of the

testator. That was not committed to him. He had no duty to perform as regards it. He was trustee of the moiety of the leased premises, and as such held the legal title to such property.

Mary A. Pollock had the legal capacity to sue as one of the lessors, and it was necessary to join her as plaintiff under the holding in *Sandusky* v. *Oil Co.*, 63 W. Va. 260. Merkel possessed the legal capacity to sue, not because he was a lessor eo nomine, but because he was the representative of an estate which was party to the original lease by representation, and which continued in existence despite the change in representative. While Mrs. Pollock was one of the beneficiaries of the trust created by the will of Julius Pollock, that fact did not give her a remedial interest in the cause of action. It is immaterial whether Merkel had a direct pecuniary interest in maintaining the action, for a court will not stop to inquire whether he has sued in his own behalf or as trustee for some other person. It suffices if he has the legal right to sue, and as representative of a continuing estate which was a party to the original lease he had such right. The case of *Nichols* v. *Campbell,* 10 Gratt. 560, is not inconsistent with this ruling, for in that case there were two trustees representing the same interest, and upon the death of one the action survived to the other. The surviving trustee represented the trust estate, thus bringing it before the court.

What, then, is the legal status of the other plaintiffs, the executors and trustees of the estate of Julius Pollock; what their rights as to the prosecution of this action? Are they controlled by the common law rule that the right of action on a contract made with several persons jointly passes on the death of each to the survivors, and on the death of the last to his representatives, and that, therefore, the action must be brought in the name of the survivor or survivors alone, it being error to join as plaintiff with surviving co-obligees the personal representative of a deceased co-obligee? Dicey on Parties, Rule 16, p. 149; *Rowe* v. *Shenandoah Pulp Co.*, 42 W. Va. 551; *Henning* v. *Farnsworth,* 41

W. Va. 548; 18 Cyc. 960.  Casually considered, these ques-
tions might be answered agreeably with principles already
stated in regard to the trusteeship provided for by the will
of Mortimer Pollock.  But there is this material and signi-
ficant difference between the situation of the parties.  At the
date of the execution of the lease Julius Pollock was liv-
ing and joined as a party to the contract.  The devise of
his moiety in trust had not then become effective.  It orig-
inated only upon his death.  Theretofore it did not possess
legal vitality.  His death was essential to its existence, and
since both occurred after the date of the contract the com-
mon law rule obtained and authorized none other than the
survivors to sue for the breach of the contract.

Though extremely technical, the rule as to survivorship
as applied to cases of this kind is so thoroughly embedded
in the procedural laws of the Virginias as not to warrant
departure therefrom.  *Henning* v. *Farnsworth, supra; Rowe*
v. *Shenandoah Pulp Co., supra.*  While the beneficiaries of
the wills of the Pollocks are entitled to the money sued for,
if any is recovered by the plaintiffs or any of them in this
or any similar action, not all of them are capable of suing.
Those only can maintain the action who were actual or
virtual parties to the lease.  The beneficiaries own the fund
but only part of them can enforce payment.  That right
devolves upon the surviving lessors as we have ascertained
them to be.

That the rule was nullified and abrogated by section 19,
ch. 85, Code, is the contention of plaintiffs' counsel.  But in
that view we do not concur.  The statute cited is simply
declaratory of the common law rule respecting the right of
a personal representative to prosecute an action for the
benefit of the estate committed to him for administration and
his liability in certain cases to respond in damages for a
breach by decedent of a contract occurring in his lifetime.
*Knotts* v. *McGregor*, 47 W. Va. 566, 570.  Before as well as
after its enactment an adminstrator or executor could sue
or be sued upon any judgment against his decedent and
for the breach of certain contracts in the making of which
the decedent participated as covenantor or covenantee.  In

other words, the statute effected no alteration of the right to sue or be sued on such contracts. It did not widen or narrow the scope of the common law rule upon that subject.

Plaintiffs also ask us to sanction the argument advanced by them to the effect that all the plaintiffs rightly were joined in the action because of the exception to Rule 16, Dicey on Parties, and cases cited thereunder. The first paragraph of the rule states the common law doctrine as to the sole right of the surviving covenantee to sue on a contract. The second paragraph, by way of exception to the rule so stated, says: "If there is a joint demise by A and B, who are tenants in common, and a covenant therein with them, e. g., to repair, an action for the breach of such a covenant must, on the death of B, be brought, not by A, but by A and M, the representative of B," citing *Foley* v. *Addenbrooke*, 7 Q. B. 197, 114 Eng. Rep. 872; *Thompson* v. *Hakewill*, 19 C. B., N. S. 713, 144 Eng. Rep. 966. The cases cited by the author, as analyzed by the learned circuit judge, do not sustain the text. The question here involved seems not to have been raised or decided in the Foley case. As showing the inapplicability of the second citation to the situation confronting us, we merely quote from the opinion this language: "We, however, are now called on to decide that the benefit of such a covenant contained in a joint demise originally made by tenants in common not only may, but must, run with the entire reversion; in other words, that tenants in common so situated not only may, but must, join as plaintiffs in an action of covenant." Of course, all parties to a joint contract, whatever its character may be, if living, must join as plaintiffs or be joined as defendants, as the case may require. To this general rule some exceptions exist, it is true, but no such exception appears here. Indeed, Dicey himself recognizes the exception which he has stated to his general rule as "only an apparent one."

As the proper disposition of the case resulting from the action upon the demurrer remains undisclosed by the record, this court declines to say what it legitimately may be, namely, whether the language of section 12, ch. 125, Code,

is sufficiently broad to warrant permission to amend the declaration by striking out the plaintiffs improperly joined, or whether it is necessary to dismiss the action without prejudice and institute another, joining in the declaration only the two persons adjudged herein to have the requisite capacity to maintain the action. These procedual questions are to be determined by the circuit court in the first instance to authorize an expression of opinion thereon here.

Deeming the ruling of the court erroneous to the extent it fails to recognize the right of another plaintiff to prosecute the action, we reverse the judgment and require the case to be remanded for further proceedings as the parties thereto may elect or the circuit court determine.

*Reversed and remanded.*