592 S.E.2d 801

**Marshall BOND, Jr., as Co–Trustee Under the Last Will and Testament of Marshall Bond, Deceased, and Antoinette Bond Thomas, as Co–Trustee Under the Last Will and Testament of Marshall Bond, Deceased, Antoinette Bond Morrison, and J. Christopher Thomas, Plaintiffs Below, Appellees,**

v.

**Philip BOND, as Co–Trustee Under the Last Will and Testament of Marshall Bond, Deceased, Defendant Below, Appellant.**

No. 31310.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 2003.

Decided Nov. 21, 2003.

---

24

Ancil G. Ramey, Esq., Robert A. Wilson, Jr., Esq., Steptoe & Johnson, Charleston, West Virginia, Attorneys for the Appellant.

Thomas Persinger, Esq., Charleston, West Virginia, Attorney for the Appellees.

MAYNARD, Justice:

The appellant, Philip Bond, the co-trustee of a testamentary trust, appeals the April 5, 2002, order of the Circuit Court of Kanawha County that granted summary judgment to the appellees, Marshall Bond, Jr., Antoinette Bond Thomas, Antoinette Bond Morrison, and J. Christopher Thomas, and appointed two successor co-trustees to administer the testamentary trust in addition to the appellant. For the reasons set forth below, we reverse and remand.

## I.

## FACTS

Marshall Bond died in 1951. By his will he created a trust and named as trustees his three children, Appellees Marshall Bond, Jr., and Antoinette Bond Thomas, along with Appellant Philip Bond. Marshall Bond made his three children income beneficiaries with each receiving a one-third share of the income. He further provided:

*Second:* This trust shall terminate upon the death of the survivor of my son, Marshall Bond, Jr., my son, Philip Bond, and my daughter, Antoinette Bond Thomas, and the trust estate shall thereupon be distributed as follows:

To the issue of Marshall Bond, Jr., per stirpes, one-third (1/3);

To the issue of Philip Bond, per stirpes, one-third (1/3);

To the issue of Antoinette Bond Thomas, per stirpes, one-third (1/3).

In the event that upon the termination of this trust there are no issue of any one

of my aforesaid children living, the share of the trust estate to which the said issue would be entitled shall be distributed among the issue of my other said children, per stirpes.

In addition, article IV, paragraph Fourth, subparagraph 23 of the settlor's will provides:

Upon the death, disability, resignation or refusal to serve of any of the aforesaid Trustees, the remaining Trustees or Trustee shall have all the rights, powers and duties hereunder, with like effect as if named the sole Trustees or Trustee hereunder. As long as three Trustees are acting, the view of the majority of them shall prevail in the event they differ on any question.

In 2001, two of the co-trustees, Appellees Marshall Bond, Jr. and Antoinette Bond Thomas, decided, for various personal reasons, to resign their co-trustee positions. Both desired to appoint one of their children to replace them as co-trustees. Marshall Bond, Jr. sought to have his daughter, Appellee Antoinette Bond Morrison, appointed, and Antoinette Bond Thomas sought to have her son, Appellee J. Christopher Thomas, appointed.[1]

The appellees filed a declaratory judgment action in order to make the co-trustee substitutions. Appellant Philip Bond, the remaining co-trustee, objected to the substitutions. After a hearing, the circuit court granted summary judgment on behalf of the appellees. Specifically, the circuit court ordered in relevant part:

(i) The resignation of Marshall Bond, Jr., as a Co–Trustee of the Marshall Bond Trust is hereby accepted and said Marshall Bond, Jr. is hereby released and discharged from all duties, obligations, and liability as a Co–Trustee of the Trust, and Antoinette Bond Morrison is hereby appointed as a successor Co–Trustee of the Marshall Bond Trust with full authority and power to act as a Co–Trustee of the Trust;

1. Marshall Bond, Jr. has three children and Antoinette Bond Thomas has four children. Appellant Philip Bond has no children.

(ii) The resignation of Antoinette Bond Thomas as a Co–Trustee of the Marshall Bond Trust is hereby accepted and said Antoinette Bond Thomas is hereby released and discharged from all duties, obligations, and liability as a Co–Trustee of the Trust, and J. Christopher Thomas is hereby appointed as a successor Co–Trustee of the Marshall Bond Trust with full authority and power to act as a Co–Trustee of the Trust; said Antoinette Bond Morrison and J. Christopher Thomas to serve as Co–Trustees with Philip Bond, who will remain and serve as a Co–Trustee of the Trust[.] [2]

\* \* \* \* \* \*

(vi) The costs (including filing fees, service of process fees, publication fees, photocopying expenses and postage expenses) of Plaintiffs and Defendant Philip Bond shall be reimbursed from, and paid out of, the Marshall Bond Trust; provided, however[,] that each party shall bear their respective attorney's fees. (Footnotes added.)

The appellant, Philip Bond, now appeals this order.

## II.

## STANDARD OF REVIEW

■ We review the circuit court's grant of summary judgment *de novo. See* Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo.*").

## III.

## DISCUSSION

### A. *Propriety of Appointment of Replacement Co–Trustees*

#### 1. *The Settlor's Intent*

In challenging the circuit court's appointment of replacement trustees, the appellant first argues that the circuit court erred in

disregarding Marshall Bond's clear and unambiguous intent that no new trustees should be appointed as the number of named co-trustees diminished.

■ It is axiomatic that "[t]he paramount principle in construing or giving effect to a trust is that the intention of the settlor prevails, unless it is contrary to some positive rule of law or principle of public policy." Syllabus Point 1, *Hemphill v. Aukamp,* 164 W.Va. 368, 264 S.E.2d 163 (1980).

> Effect must be given to valid terms of a trust as to the mode and manner of the substitution, and succession of trustees in the administration of the trust and such terms must be carefully followed. In this regard, the power to appoint trustees is to be strictly construed, although a construction is to be avoided which will constitute a highly improbable intent. . . . In short, if a trust instrument prescribes a procedure for dealing with a vacancy in trustees, the court should generally defer to this procedure and follow the desires of the settlors absent a showing that to do so would frustrate the purposes of the trust or be detrimental to the interests of the beneficiaries. Where, however, the terms of the trust are silent in the matter, the substitution and succession of trustees must be governed by statutory or case law.

76 Am.Jur.2d, *Trusts* § 262 (1992) (footnotes omitted). Accordingly, we now look to the applicable provision of the settlor's will to determine his intent.

■ The provision in question provides:

> Upon the death, disability, resignation or refusal to serve of any of the aforesaid Trustees, the remaining Trustees or Trustee shall have all the rights, powers and duties hereunder, with like effect as if named the sole Trustees or Trustee hereunder. As long as three Trustees are acting, the view of the majority of them shall prevail in the event they differ on any question.

---

2. By a previous order, the circuit court implemented a nomination procedure by which any party in the action was entitled to nominate, within a prescribed period, one or two disinterested individuals, one disinterested individual and a bank, or appellees Antoinette Bond Morrison and J. Christopher Thomas for appointment by the court as successor co-trustees of the Bond trust. All of the nominations received by the circuit court were for Antoinette Bond Morrison and J. Christopher Thomas.

The circuit court made two findings with regard to this provision. First, the court found, in effect, that, because this provision does not expressly provide that the "survivors" or "survivor" of the original three co-trustees "shall have all the rights, powers and duties" as if named the sole trustee or trustees, the settlor's intent was that three trustees be maintained. After a careful analysis of the language of this provision, we respectfully disagree.

It is clear from the language of the will that the settlor recognized and anticipated that one or more of the named co-trustees may cease to act as trustee due to death, disability, resignation or refusal to serve. Despite recognizing such a possibility, however, the settlor made no provision for replacing the named trustee or trustees who became unable to fulfill their obligations. Instead, he specifically provided that "the remaining Trustees or Trustee shall have all the rights, powers and duties hereunder, with like effect as if named the sole Trustees or Trustee hereunder." This language plainly indicates that no new trustees are to replace those named in the trust. By providing that, as named trustees ceased to act, those "remaining" were to continue to serve the trust, the settlor clearly expressed his desire that the number of trustees be allowed to diminish without the appointment of new trustees.

The circuit court and the appellees place great weight on the fact that the settlor did not use the express terms "survivors" or "survivor" to manifest his intent that surviving original trustees be permitted to manage the trust. We find this to be without significance. The settlor simply used the word "remaining" instead of "surviving" to describe the original trustee or trustees who were to continue to serve after the departure of one or more co-trustees. That the word "remaining" is an alternate term for "surviving" is recognized in W.Va.Code § 44–14–4 (1992), which provides that "the surviving *or remaining* trustee, who has power to execute any trust or the remainder of any trust . . . shall be vested with all the estates, rights and powers, and charged with all the duties and responsibilities, of the trustee or trustees

named in the trust instrument." (Emphasis added.).

Second, the circuit court found that, by providing that "[a]s long as three Trustees are acting, the view of the majority of them shall prevail in the event they differ on any question," the settlor did not intend to limit the trustees to the three original trustees named in his will. Again, we disagree. Instead, we believe that this provision simply indicates the method by which the settlor intended that the three original co-trustees were to resolve differences of opinion in the decision-making process. We further find that the phrase "as long as three Trustees are acting" plainly indicates the settlor's recognition and anticipation that there may come a time when less than three trustees are acting. Accordingly, we find that the circuit court erred in holding that the settlor intended that three trustees be maintained to manage his trust.

### 2. *The Meaning of W.Va.Code § 44–14–1(a)*

■ The appellees contend, however, that W.Va.Code § 44–14–1(a) (1992), authorizes the circuit court to appoint replacement trustees under the instant facts, on motion of any party interested. According to W.Va.Code § 44–14–1(a):

When the trustee, or, if there is more than one trustee, one or more of the trustees, in any will, deed or other writing, die or remove beyond the limits of this state, or decline to accept the trust, or having accepted, resign the same, or refuse to act as trustee, or be unable due to physical or mental disability to perform his, her, or their duties under the trust, the circuit court of the county in which such will was admitted to probate, or such deed or other writing is or may be recorded, may, on motion of any party interested, and upon satisfactory evidence of such death, removal, declination, resignation, refusal or inability, appoint a trustee or trustees in the place of the trustee or trustees named in such instrument and so dying, removing, declining, resigning or refusing, or being unable to perform his, her, or their duties under the trust.

We must reject the appellees' construction of W.Va.Code § 44–14–1(a).

 This Court has held that,

A statute should be so read and applied as to make it accord with the spirit, purposes, and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law applicable to the subject matter, whether constitutional, statutory, or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908). The construction of W.Va.Code § 44–14–1(a) urged on us by the appellees conflicts with existing statutory and common law applicable to the same subject matter. First, the appellees' construction conflicts with the general rule that the intent of the settlor should prevail. Under the appellees' reading of this code section, the settlor's intent could be frustrated merely on a motion of any party interested and at the discretion of the circuit court. We simply do not believe that the Legislature so intended.

Also, the appellees' construction is not consistent with the principle stated in the Restatement of the Law of Trusts (Third), which says:

If several persons are named as trustees and one of them dies, declines to serve or resigns, is removed, or is or becomes incapable of acting as trustee, a replacement trustee is required only if the settlor manifested an intention, or it is conducive to proper administration or purposes of the trust, that the number of trustees should be maintained. Otherwise, the remaining trustee or trustees are entitled to administer the trust.

§ 34(2) cmt. d (2003). This principle is codified in W.Va.Code § 44–14–3 (1992) which specifically provides that a remaining trustee or trustees may execute a trust subject to the two stated exceptions. For these reasons, we believe that the appellees have misconstrued W.Va.Code § 44–14–1.

Having determined what W.Va.Code § 44–14–1 *does not* mean, we now proceed to determine what it *does* mean. In *Place v. Buckley*, 126 W.Va. 926, 929, 30 S.E.2d 743, 745 (1944), this Court described it as "a remedial statute[ ] prescribing a much simplified summary proceeding by way of notice and motion as a means ... for the filling of an existing vacancy in a trusteeship[.]" The Court explained,

[W.Va.Code § 44–14–1] is not for the purpose of trying controverted questions, either legal or equitable, but is for the purpose of filling a vacant or dormant fiduciary position under a prima facie showing of right. If there is a prima facie showing of the trust's creation, its continued existence cannot be controverted. The movant, having made a prima facie showing, the appointment of a trustee adjudicates nothing more.

*Place*, 126 W.Va. at 930, 30 S.E.2d at 746.

██ W.Va.Code § 44–14–1 also has been discussed in connection with our traditional rule that "[a] court of equity will not allow a valid and existing trust to fail for want of a trustee." Syllabus Point 2, *Tildesley Coal Co. v. American Fuel Corp.*, 130 W.Va. 720, 45 S.E.2d 750 (1947). In *Pollock v. House & Hermann*, 84 W.Va. 421, 100 S.E. 275 (1919), the circuit court substituted a trustee in lieu of the sole original trustee who died. In its discussion of the substitution, this Court stated:

Apparently this substitution stands upon the authority of [W.Va.Code § 44–14–1][.]

...

The will of the decedent doubtless answers the description of the instrument embodied in the statute and falls within the scope of its provisions to the same extent as if it was a deed. But, whether this construction is a fair deduction from the language used or not, equity will not permit a trust to fail for want of a trustee, and in the absence of a provision in the creative instrument, whatever its character may be, a court of equity will substitute another trustee in his stead whenever necessary to carry into full fruition the pur-

pose intended by the donor. *Whelan v. Reilly*, 3 W.Va. 597. So that, if a will appoints a trustee for infants and he dies, equity will substitute another in his stead, even without authorization by the will itself. *Dunscomb v. Dunscomb* (Va.) 12 Va. 11, 2 Hen. & M. 11.

*Pollock*, 84 W.Va. at 423–24, 100 S.E. at 276–77. Finally, 19 Michie's Jurisprudence, *Trusts and Trustees*, § 77 (1991) discusses the rule that "[e]quity will not allow a trust to fail for want of a trustee." Included in this discussion is the assertion that West Virginia has a statute that "specifically provide[s] for the appointment of substituted trustees *where required* [,]" which cites W.Va.Code § 44–14–1.

In sum, this Court has called W.Va.Code § 44–14–1 a remedial statute; described its purpose as the filling of a dormant fiduciary position under a *prima facie* showing of right; and where the sole trustee died, intimated that a circuit court may fill a trust vacancy pursuant to *either* W.Va.Code § 44–14–1 or the rule that equity will not permit a trust to fail for want of a trustee. Also, the commentators in *Michie's Jurisprudence* understand W.Va.Code § 44–14–1 specifically to provide for the appointment of replacement trustees where required. Accordingly, we conclude that the purpose of W.Va.Code § 44–14–1 is to provide, in the absence of applicable language in the trust instrument, for the appointment of a replacement trustee or trustees where such an appointment is required to prevent the failure of the trust. This construction of W.Va.Code § 44–14–1 is in harmony with our common law rule favoring the settlor's intent as well as other statutes of the same subject matter.

In the instant case, express language in the settlor's will provides for the management of the trust if one or more co-trustees resign. In addition, the appointment of replacement trustees was not required to prevent the failure of the trust. Therefore, we find that W.Va.Code § 44–14–1 has no applicability to the instant facts.

*3. The Meaning of W.Va.Code § 44–14–3*

 We believe, rather, that the statute which governs this case is W.Va.Code § 44–14–3 (1992), which states:

The personal representative of a sole or surviving trustee, or if there be more than one trustee, and one or more of them die, resign, or remove from the state, or decline to accept the trust, or refuse to act as such trustee or trustees, the remaining trustee or trustees, may execute the trust, or so much thereof as remained unexecuted at the death, removal, declination, resignation, or refusal aforesaid (whether the trust subject be real or personal property), unless the instrument creating the trust directs otherwise, or some other trustee be appointed for the purpose pursuant to the provisions of this article.

In plain language, W.Va.Code § 44–14–3 provides that if there is more than one trustee of a trust, and one or more of the trustees cease to serve as trustee for any of the enumerated reasons, the remaining trustee or trustees may execute the trust, subject to the two exceptions stated therein. The first exception is "unless the instrument creating the trust directs otherwise[.]" Clearly, this exception incorporates our traditional common law rule that the intent of the settlor should prevail. The second exception provides "or some other trustee be appointed for the purpose pursuant to the provisions of this article."

According to the appellees, this second exception is an explicit reference to the overriding authority of a circuit court to appoint a successor trustee. We disagree. The phrase "pursuant to the provisions of this article" refers, of course, to article 14 of chapter 44 of the Code. A survey of article 14 indicates that the only section of the article to which this exception could refer is W.Va. Code § 44–14–1.[3] We already have deter-

---

**3.** W.Va.Code § 44–14–2 (1992) concerns the procedure for the appointment of replacement trustees pursuant to W.Va.Code § 44–14–1. The powers and responsibilities of substituted or remaining trustees is dealt with in W.Va.Code § 44–14–4 (1992). Finally, W.Va.Code § 44–14–5 (1992) concerns the validation of good faith acts by a substitute trustee.

mined above that W.Va.Code § 44–14–1 applies to circumstances where a trustee is required to be appointed in order to prevent the failure of the trust.[4] Accordingly, we hold that the clause "[unless] some other trustee be appointed for the purpose pursuant to the provisions of this article" in W.Va. Code § 44–14–3 refers specifically to the provisions in W.Va.Code § 44–14–1 for the appointment of a replacement trustee or trustees in order to prevent the failure of the trust. We now apply W.Va.Code § 44–14–3 to the facts before us.

▮▮▮ Initially, we find that upon the resignations of Marshall Bond, Jr. and Antoinette Bond Thomas as co-trustees, W.Va.Code § 44–14–3 provides that the appellant, as the remaining trustee, was to execute the trust. The first exception to this rule, "unless the instrument creating the trust directs otherwise," is not applicable because the language of the settlor's will contains the same provisions as W.Va.Code § 44–14–3 for the management of the trust by the remaining trustee. The second exception, "[unless] some other trustee be appointed for the purpose pursuant to the provisions of this article," is not applicable because it was not necessary to appoint a trustee to prevent the failure of the trust as provided for in W.Va.Code § 44–14–1. Therefore, we find that the circuit court erred in appointing replacement co-trustees to manage the Bond trust in violation of both the settlor's intent, as set forth in his will, and the provisions of W.Va.Code § 44–14–3. Accordingly, we reverse the judgment of the circuit court.

### B. Propriety of Attorney Fees From The Trust

▮▮▮ The appellant also assigns as error the circuit court's order requiring him to bear his own attorney fees, and he contends that he was not afforded an opportunity to be heard on the matter. In considering this issue, we are mindful that "[t]he trial [judge] is vested with a wide discretion in determining awards ... of ... court costs and counsel fees; and the trial [judge's] determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that he has abused his discretion." Syllabus Point 3, in part, *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959).

▮▮▮ The traditional rule governing awards of attorney fees says that "each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement except when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syllabus Point 9, in part, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991). However, one exception to this rule is that a trustee may be reimbursed for attorney fees out of the trust corpus in certain circumstances. In *Rogerson v. Wheeling Dollar Sav. & Trust Co.*, 159 W.Va. 376, 383, 222 S.E.2d 816, 822 (1976), this Court affirmed the payment of all attorney fees from the corpus of the trust assets where the will specifically provided:

> In the event of litigation arising, affecting ... the interpretation and/or construction of this, my last will and testament, or in the event of doubt on the part of my said Trustees as to the interpretation ... of this trust, they shall have the right to employ counsel of their selection, and to defray their and counsel's reasonable expenses, if any, and any court costs or other expenses imposed upon them in connection therewith, charging the same against the principal of the trust fund.

This Court explained:

> A trustee is not compelled to act at his peril in the administration of the trust.

---

4. Subsection (b) of W.Va.Code § 44–14–1(b) provides an alternative method of substitution specifically in cases involving a deed of trust. Subsection (c) concerns the appointment of an ancillary trustee when a trust, other than a security trust, includes real property situated in this State, and the trustee or trustees appointed by the trust instrument is a corporation or association chartered under the laws of another state so that it is not qualified to conduct business in this State.

He is entitled to the instructions of the court as a protection and the trustee can properly pay out of the trust estate the costs incurred in the application to the court for instructions, if he acted reasonably in making application to the court. *Scott on Trusts* (3rd Ed.), § 259. Moreover, the testator envisaged such an eventuality when he included the provision in his will ... for such payment of legal expenses.

*Wheeling Dollar*, 159 W.Va. at 384, 222 S.E.2d at 822. In addition, commentators have observed that,

the courts which have considered the propriety ... of awarding attorney's fees from the trust estate in actions between cotrustees have considered such factors as who ultimately benefitted from the action, which party was successful in the action, the necessity of resolving the dispute through litigation, and the fault, if any, of the party seeking to have his fees paid from the trust estate, with the ultimate decision being primarily left to the discretion of the trial judge.

Lee R. Russ, J.D., *Award of Attorneys' Fees Out of Trust Estate in Action by Trustee Against Co–Trustee*, 24 A.L.R.4th 624 § 2 (1983).

█ Applying these principles to this case, we first note that, as in *Wheeling Dollar*, the settlor specifically provided in his will for the payment of attorney fees from the trust corpus. According to this provision, "[t]he Trustees shall have the right to defend any attack upon the trust or any provision thereof, and to employ counsel in that behalf, and to pay any and all expenses of such defense out of the income or the corpus of the trust estate." In this case, the appellant was required to defend a challenge to a provision in the will when the appellees filed suit seeking the appointment of replace-ment co-trustees. Also, as a result of our decision herein, the appellant has successfully defended the appellees' suit. Finally, the appellant was not at all at fault in bringing the suit below. Therefore, this Court finds that the circuit court abused its discretion in failing to award to the appellant's counsel reasonable attorney fees to be paid from the trust corpus. Further, the appellant is to be reimbursed any such fees heretofore advanced by him, said fees to be paid from the trust corpus.

As a final matter, we note that during oral argument the appellant's counsel informed this Court that the appellant does not object to permitting the appellees and original co-trustees, Marshall Bond, Jr. and Antoinette Bond Thomas, to rescind their resignations so that they may resume their duties and responsibilities as co-trustees of the Bond trust along with the appellant. In accord with the desires of the appellant, we clarify that nothing in this opinion should be construed as prohibiting Marshall Bond, Jr. and Antoinette Bond Thomas from rescinding their resignations and resuming their co-trustee duties.

## IV.

For the reasons set forth above, this Court reverses the judgment of the Circuit Court of Kanawha County, and we remand for proceedings consistent with this opinion.

Reversed and Remanded.