# CHARLESTON.

Samuel Stephenson, *Adm'r. et als. v.* Point Pleasant Building & Loan Association *et als.*

H. H. Vickers, *Appellant.*

(No. 6108)

Submitted March 11, 1930.    Decided March 25, 1930.
(Rehearing denied May 5, 1930.)

*B. H. Blagg* and *Somerville & Somerville,* for appellee.
*Hogg & Hogg* and *F. G. Musgrave,* for appellant.

WOODS, JUDGE:

H. H. Vickers complains of a decree of the circuit court of Mason County setting aside a trustee's sale, and cancelling the deed executed thereunder.

The sale in question was held at ten o'clock, A. M., on the 18th day of June, 1921, at which time the property was sold to Vickers for $1,800.00 cash—that being the only bid received. The requirement in the deed of trust that any sale thereunder ''shall be for cash, at public auction to the highest bidder, at the front door of the court house, but notice of the time, terms and place of such sale be given for the time and in the manner required by law prior to the time fixed

upon for such sale'', in so far as the mechanics thereof were concerned, was, so far as the record discloses, carried out to the letter. There is a cardinal rule, however, that a trustee in such case, in addition to following the directions contained in the instrument of trust, must exercise honesty and good faith, using the same diligence in obtaining a fair price that an individual owner would exercise. 39 Cyc. 358.

Was it a fair and regular sale, and for a fair and full price? A trustee must always act impartially, and as far as possible for the advantage of all parties interested in the sale, and use reasonable efforts to obtain the best price he can. *Livey* v. *Winton,* 30 W. Va. 554; *Muller's Adm'r.* v. *Stone,* 84 Va. 834. In order to secure the best price obtainable, he may defer the time of sale, and he is not bound to proceed at once when to do so would probably result in his realizing a price substantially less than could be procured by waiting until a more opportune time. *Hawkins* v. *Alston,* 4 Ired. Eq. 137.

The correctness of the chancellor's ruling in the instant case depends upon whether or not there is sufficient evidence to show that Beller (trustee) and Vickers knew that C. C. Bowyer, president of the Merchants National Bank, desired to be present and bid on the property; and that Beller conducted the sale in such a manner as to eliminate competitive bidding, to the injury of plaintiffs.

Sometime between nine and ten o'clock, on the morning of the sale, Mr. Beller, the trustee, was in the director's room of the Merchants National Bank, where certain matters relative to the sale were discussed with Mr. Bowyer and Mr. Hogg, attorney for Vickers. Mr. Hogg at first talked of enjoining the sale, but it was finally agreed to let the property go to sale. Bowyer stated that he informed Beller at that time that he expected to be present and bid on the property, and that Beller agreed to hold the bidding open until he (Bowyer) could get there, stating in answer to the latter's inquiry as to time, that the sale would take place at eleven o'clock. According to Beller, Hogg and Vickers, the conversation with Bowyer was in reference to a note held by the bank, and that Bowyer insisted that the property must bring $1,707.03.

704

They do, however, admit that something was said relative to the hour of sale. Mr. Hogg states that he told Mr. Bowyer, in the presence of the others, that there could be no question about the time of the sale, that it was ten o'clock. Vickers heard Hogg make the same statement to Bowyer. This latter fact is a strong circumstance tending to support Bowyer in his statement that he requested Beller to hold the sale open until he could get there. Bowyer and J. S. Spencer, cashier, who was on a note which was covered by the sale, both state that Bowyer expressed his intention of being present and bidding on the property; that he had made arrangements to bid the property in.

J. W. Burdett, the other prospective purchaser, states that he went to the courthouse five minutes before ten to see if the taxes had been paid on the property; that while in the sheriff's office someone informed him that Beller was "crying" the sale, and that on leaving the building he met Beller in the corridor, and was advised by him that the sale was over; that he asked Beller something to the effect that it was "pulled off" on record time, and Beller replied: "No, I think not", or something to that effect.

Mr. Beller states that he went to his office in the courthouse after the conference in the bank building; that "a short time thereafter Mr. C. E. Hogg and H. H. Vickers came into my office, and said the hour of sale had arrived. I looked at my watch and saw that it was full ten o'clock, stepped out and looked at the courthouse clock, and it was then ten o'clock by it. I commenced crying the sale, cried it for a short time, I could not just state, perhaps five minutes. There being no competitive bid, I knocked the property off to H. H. Vickers for $1,800.00 cash."

On the question of value, Bowyer stated that he thought the property was easily worth $100.00 a foot and that he intended to take a chance on that bid; Burdett testified that he was prepared to bid it up to $3,000.00; and Shiflet, a real estate salesman, stated that he could have sold the property at the time of the sale for $4,000.00.

The chancellor found against the purchaser on the foregoing facts, and we cannot say, after a careful review of all of the

evidence, that such finding was against the plain preponderance of the evidence. *Davis* v. *Trust Co.*, 107 W. Va. 141; *Kincaid* v. *Evans*, 106 W. Va. 605; *McBee* v. *Deusenberry*, 99 W. Va. 176; *Weaver* v. *Akin*, 48 W. Va. 456.

In view of the fact that the evidence is to the effect that the property was worth considerable more than $1,800.00, and that both Beller and Vickers knew of other prospective bidders, and that the sale was unduly rushed to completion, we are of opinion that the plaintiffs were entitled to have the sale and deed set aside, on the condition that they pay the appellant the sum of $1,800.00, plus interest from the 18th day of June, 1921, subject to a debit for the rent of the property, less insurance and taxes. As so defined, the decree will be affirmed.

*Modified and affirmed.*