618 S.E.2d 488

Jackie LUCAS, Janice Lucas, Jack Overbaugh, Charlotte Overbaugh, Dale Michaelson, Pansy Michaelson, and Angela Michaelson, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

FAIRBANKS CAPITAL CORP., a Corporation, R. Vance Golden, III, John Doe and Robert Doe, as Trustees, Defendants.

Nos. 31744, 31745.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 2005.

Decided March 18, 2005.

Concurring and Dissenting Opinion of Justice Starcher July 14, 2005.

Daniel F. Hedges, Bren J. Pomponio, Heather W. Walsh, Mountain State Justice, Inc., Charleston, for Plaintiffs.

R. Vance Golden, III, Golden & Amos, Parkersburg, Pro Se.

Sandra M. Murphy, Julia A. Chincheck, Thomas A. Heywood, Courtney A. Kirtley, Bowles Rice McDavid Graff & Love, L.L.P., Charleston, for Amici Curiae, The West Virginia Bankers Assoc., Inc. and The West Virginia Association of Community Bankers, Inc.

Ancil G. Ramey, Kara L. Cunningham, Steptoe & Johnson, P.L.L.C., Charleston, Evans L. King, Jr., Davin L. Seamon, Steptoe & Johnson, P.L.L.C., Clarksburg, Thomas M. Hefferon, Goodwin Procter, L.L.P., Washington, DC, for Defendant, Fairbanks Capital Corp.

DAVIS, Justice:

The Circuit Court of Lincoln County presents this Court with two certified questions involving sales under deeds of trust given as security for home mortgage loans under W. Va.Code § 38-1-3 (1923) (Repl. Vol. 1997). The first question inquires whether a trustee's fiduciary duty requires him or her to, prior to foreclosure, perform functions that are not expressly set out in any relevant statute or the deed of trust document. We answer this question in the negative. The second question asks whether the creditor in a deed of trust must pursue remedies that are not set out in the deed of trust document or any relevant statute to attempt to cure a default prior to foreclosure. We likewise answer this question in the negative.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The underlying putative class action lawsuit was filed on January 2, 2003, in the Circuit Court of Lincoln County, by plaintiffs Jackie and Janice Lucas, Jack and Charlotte

Overbaugh, Dale and Pansy Michaelson, and Angela Kennedy, individually and on behalf of all others similarly situated (hereinafter collectively referred to as "the Lucases"), against defendants Fairbanks Capital Corp. (hereinafter referred to as "Fairbanks"), and R. Vance Golden, III (hereinafter referred to as "Mr. Golden").[1] The Lucases are homeowners who are obligated under home loans for which Fairbanks is the loan servicer.[2] The Lucases alleged numerous wrongful acts by Fairbanks in performing its loan servicing activities, such as failing to post or improperly posting payments tendered, charging and collecting unlawful fees, and illegally pursuing foreclosure. They asserted causes of action against Fairbanks for breach of the duty of good faith and fair dealing, illegal pursuit of foreclosure, and collection of unauthorized charges.

Mr. Golden, the second named defendant in the Lucases law suit, serves as trustee or substitute trustee on many West Virginia deeds of trust for loans serviced by Fairbanks. The Lucases asserted claims against Mr. Golden for breach of fiduciary duty as trustee and illegal pursuit of forfeiture. The Lucases sought actual and punitive damages against both Fairbanks and Mr. Golden, and further sought to enjoin Fairbanks and Mr. Golden from pursuing "illegal practices as alleged." In addition, the Lucases filed a motion for a temporary injunction to enjoin Fairbanks and Mr. Golden from foreclosing on any properties in West Virginia. On or about January 8, 2003, the Circuit Court of Lincoln County entered an order granting the temporary injunction and directing that Mr. Golden "shall not proceed with any foreclosure on behalf of defendant Fairbanks on loans serviced by Fairbanks in the State of West Virginia until further order of this Court."

Thereafter, on or about January 17, 2003, the Lucases filed a motion seeking partial judgment on the pleadings and a motion to certify questions. Substantial proceedings followed, including significant settlement discussions. The parties ultimately reached a monetary settlement of the action. However, the parties apparently disagreed as to whether they had also resolved issues related to declaratory or injunctive relief, which led the Lucases to file a motion to enforce settlement. Following a hearing on or about December 8, 2003, the circuit court approved, at least on a preliminary basis, the monetary settlement, but did not act on the motion to enforce settlement as it related to other relief. The circuit court did, however, hear arguments related to the Lucases' motion to certify questions, and ultimately agreed to certify the following two questions to this Court:

1. Does the fiduciary duty of the trustee to both parties of a deed of trust include the duty to proceed to foreclosure (a) only after review of the account records to ascertain the actual amount due, and (b) to consider legitimate objections of the grantor/homeowner to foreclosure sale?

The circuit court answered this question in the affirmative.

2. Does the principle that equity abhors a forfeiture require home equity loan servicers such as Fairbanks Capital Corp. to pursue another remedy (*e.g.* a repayment plan, or other remedy at law) other than foreclosure when it can be made whole through such other remedy?

The circuit court answered this question in the affirmative.

Following the circuit court's ruling granting the motion to certify questions, the parties negotiated further and apparently reached an agreement with respect to disputed declaratory and injunctive aspects of their dispute, with the exception of the issues raised in the questions herein certified. By order entered December 8, 2003, the circuit court certified the two above-quoted ques-

---

1. The complaint was later amended to include as defendants John Doe and Robert Doe, as trustees.

2. As a loan servicer, Fairbanks does not extend funds to borrowers. Instead, Fairbanks is paid a fee by the creditors of loans to provide various administrative services such as sending out monthly statements to borrowers, responding to borrower inquiries, collecting payments from borrowers, forwarding payments to the owners of the loans it services, appointing trustees on West Virginia deeds of trust, and referring loans out for foreclosure.

tions to this Court. On March 24, 2004, Fairbanks filed a petition in this Court asking that we accept the questions certified, and further asking that we reformulate those questions. On the same day, the Lucases filed a petition asking this Court to docket the certified questions. We consolidated the two petitions for purposes of our consideration and accepted the certified questions for review. Upon examining the briefs filed by the Lucases; Fairbanks; Mr. Golden;[3] and The West Virginia Bankers Association, Inc and The West Virginia Association of Community Bankers, Inc., as Amici Curiae;[4] hearing oral arguments, and reviewing the relevant law, we reformulate both questions and now answer them in the negative.[5]

## II.

## CERTIFIED QUESTIONS

Upon consideration of the questions certified by the Circuit Court of Lincoln County, we have determined that reformulating them will allow this Court to better address the legal questions therein raised. In this respect, we have previously held that

" '[w]hen a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W. Va.Code*, 51–1A–1 *et seq.* and *W. Va.Code*, 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.' Syl. Pt. 3, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993)." Syllabus Point 1, *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000).

Syl. pt. 1, *Charter Communications VI, PLLC v. Community Antenna Serv., Inc.*, 211 W.Va. 71, 561 S.E.2d 793 (2002). *Accord* W. Va.Code § 51–1A–4 (1996) (Repl. Vol.

2000) ("The [S]upreme [C]ourt of [A]ppeals of West Virginia may reformulate a question certified to it."). Therefore, we reformulate the first certified question as follows:

1. Does the trustee in a trust deed given as security in connection with a home mortgage loan owe a fiduciary duty to the signatories of the trust deed to, prior to foreclosing under W. Va.Code § 38–1–3 (1923) (Repl. Vol. 1997), (1) review account records to ascertain the actual amount due, or (2) consider objections to foreclosure raised by the trust grantor?

The second certified question is reformulated to ask:

2. Does the principle that equity abhors a forfeiture require creditors in a deed of trust, or their representatives, to pursue remedies that are not set out in the deed of trust, or any relevant statutes, to attempt to cure a default prior to pursuing a foreclosure under W. Va.Code § 38–1–3?

Following a brief statement of the appropriate standard for our review, we will address each of these questions in turn.

## III.

## STANDARD OF REVIEW

■ It is well-settled law that " '[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*.' Syllabus point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996)." Syllabus pt. 2, *Keplinger v. Virginia Elec. & Power Co.*, 208 W.Va. 11, 537 S.E.2d 632 (2000). *Accord* Syl. pt. 1, *Perito v. County of Brooke*, 215 W.Va. 178, 597 S.E.2d 311 (2004); Syl. pt. 2, *Charter Communications v. Community Antenna Serv., Inc.*, 211 W.Va. 71, 561 S.E.2d 793. Accordingly, we proceed to conduct a plenary review of the reformulated certified questions.

---

3. Though Mr. Golden is a named defendant in the action below, he has joined the Lucases in asking this Court to answer the certified questions affirmatively and to provide a set of rules to govern trustees in the exercise of their official duties.

4. We pause briefly to acknowledge our appreciation for the participation of the Amici Curiae in this case.

5. Although we choose to exercise our power to reformulate the certified questions, we reject the proposed reformulated questions offered by Fairbanks. *See* Section II, *infra*.

## IV.

## DISCUSSION

In presenting their arguments to this Court in relation to the questions herein certified, the parties have discussed at length the changes that have occurred in the lender/borrower relationship in this State. They have explained the development and growth of the secondary mortgage market and exhorted its pros and cons. They also discuss the pervasive use of loan servicers such as the defendant Fairbanks in the lending industry. Furthermore, the parties explore the possible benefits and risks of accomplishing change in this critical area, which ranges from providing greater protection for homeowners to severely limiting the availability of mortgage loans to West Virginians.

In this regard, the Lucases and Mr. Golden urge this Court to develop and adopt a set of rules to govern the conduct of loan servicers and trustees in connection with the administration of loans in trustee foreclosure proceedings. While the extent and depth of their efforts is laudable, the simple fact is that they have not chosen the proper forum in which to have their multifarious concerns addressed. We do not deny that the present statute governing sales under trust deeds, enacted long ago in 1923, may well be inadequate to address the complexities of the modern state of the home loan mortgage industry as it relates to trust deed transactions. However, such issues are for the Legislature to resolve.

" '[T]he judiciary may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.' " *State ex rel. Blankenship v. Richardson*, 196 W.Va. 726, 735, 474 S.E.2d 906, 915 (1996) (quoting *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 692, 408 S.E.2d 634, 642 (1991)). *State ex rel. Orlofske v. City of Wheeling*, 212 W.Va. 538, 546–47, 575 S.E.2d 148, 156–57 (2002). Consequently, in addressing the certified questions before us, we will constrain ourselves to interpreting, if necessary, and applying the relevant statutory provisions.

### A. Reformulated Question One

Does the trustee in a trust deed given as security in connection with a home mortgage loan owe a fiduciary duty to the signatories of the trust deed to, prior to foreclosing under W. Va.Code § 38-1-3 (1923) (Repl. Vol. 1997), (1) review account records to ascertain the actual amount due, or (2) consider objections to foreclosure raised by the trust grantor?

We begin by discussing whether the duty owed by a trustee in a deed of trust is that of a fiduciary. The Lucases characterize the duty owed by the trustee to both the trust debtor and the trust creditor as a fiduciary duty. Fairbanks does not disagree with this characterization.

We previously have defined a fiduciary duty as " '[a] duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person. It is the highest standard of duty implied by law[.]' " *Elmore v. State Farm Mut. Auto. Ins. Co.*, 202 W.Va. 430, 435, 504 S.E.2d 893, 898 (1998) (quoting *Black's Law Dictionary* 625 (6th ed. 1990)). *See generally Black's Law Dictionary* 523 (7th ed. 1999) ("A duty of utmost good faith, trust, confidence, and candor owed by a fiduciary (such as a lawyer or corporate officer) to the beneficiary (such as a lawyer's client or a shareholder); a duty to act with the highest degree of honesty and loyalty toward another person and in the best interests of the other person (such as the duty that one partner owes to another).").

Though not using the term "fiduciary," this Court has described what basically amounts to a fiduciary duty on the part of a trustee in the deed of trust context by holding that "[i]t is the duty of the trustee to look to the rights and interests of the trust-debtor, as well as to those of the trust-creditor, in-as-much as he is the agent of both parties, and bound to act impartially, between them." Syl. pt. 7, *Hartman v. Evans*, 38 W.Va. 669, 18 S.E. 810 (1893). This holding and similar comments have been repeated often throughout the history of this State. *See Moore v. Hamilton*, 151 W.Va. 784, 792, 155 S.E.2d 877, 882

(1967) ("It is, however, the duty of a trustee in a deed of trust to look to the interests of the trust debtor as well as to those of the creditor and the trustee, who is the agent of both parties, is bound to act impartially between them." (citing *Hartman*)); *Stephenson v. Point Pleasant Bldg. & Loan Ass'n,* 108 W.Va. 701, 703, 152 S.E. 790, 790 (1930) ("A trustee must always act impartially, and as far as possible for the advantage of all parties interested in the sale, and use reasonable efforts to obtain the best price he can." (citations omitted)); Syl. pt. 9, *Copelan v. Sohn,* 75 W.Va. 83, 82 S.E. 1016 (1912) ("An attorney for the creditor is not incompetent to act as trustee in a deed of trust securing a debt; but being then the agent of both parties he is bound, in executing the trust, to act honestly and impartially between the parties, and endeavor by proper notice and otherwise to obtain the best price for the property, and if necessary, to invoke the aid of a court of equity in doing so."); *First Nat'l Bank v. Prager,* 50 W.Va. 660, 690, 41 S.E. 363, 376 (1902) ("In *Rossett v. Fisher,* 52 Va. 492, 11 Grat. [492,] 498–99 [(Va.1854)], the court says: 'A trustee in a deed of trust is the agent of both parties and bound to act impartially between them; nor ought he to permit the urgency of the creditors to force the sale under circumstances unjust to the debtor at an inadequate price.' "), *overruled in part on other grounds by Frye v. Miley,* 54 W.Va. 324, 46 S.E. 135 (1903); *Smith v. Lowther,* 35 W.Va. 300, 308, 13 S.E. 999, 1001 (1891) ("It has been frequently held that the trustee in a deed of trust is the agent of both the grantor and the *cestui que trust,* and his duty requires him to act impartially between them. A confidence is reposed in him by both parties . . . ."); Syl. pt. 3, *Livey v. Winton,* 30 W.Va. 554, 4 S.E. 451 (1887) ("A trustee in a deed of trust is the agent of both parties, and bound to act impartially between them. He is bound to bring the estate to the hammer, for the best interest of his *cestui que trust,* and should use all reasonable diligence to obtain the best price for the land.").

■ Moreover, in discussing the duty of a trustee in connection with sales under the deed of trust pursuant to W. Va.Code § 38–1–3, this Court alluded to the existence of a fiduciary duty in the case of *Emery's Motor Coach Lines v. Mellon National Bank & Trust Co. of Pittsburgh,* where we commented, in discussing the sale of property in foreclosure of a deed of trust, that "[i]t is a well known principle, long established in this state, that, as a matter of public policy, *a fiduciary cannot profit from the sale of property to which he bears a trust relationship.*" 136 W.Va. 735, 745, 68 S.E.2d 370, 375 (1951) (citations omitted) (emphasis added). Accordingly, to clarify the law with respect to the existence of a fiduciary duty on the part of a trustee to a deed of trust, we now expressly hold that the trustee in a trust deed given as security in connection with a home mortgage loan owes a fiduciary duty to the signatories of the trust deed.

Turning now to the essence of the first certified question, the Lucases argue that the fiduciary duty includes the duty to proceed to foreclosure *only after* reviewing the account records to ascertain the actual amount due as well as to consider legitimate objections of the grantor/homeowner to the foreclosure sale. We disagree with these propositions.

■ We begin our analysis by reviewing the relevant statute, while bearing in mind that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). The duties of a trustee with respect to a sale under a trust deed are set out in W. Va.Code § 38–1–3 (1923) (Repl. Vol. 1997), which states:

The trustee in any trust deed given as security shall, whenever required by any creditor secured or any surety indemnified by the deed, or the assignee or personal representative of any such creditor or surety, after the debt due to such creditor or for which such surety may be liable shall have become payable and default shall have been made in the payment thereof, or any part thereof, by the grantor or other person owing such debt, and if all other conditions precedent to sale by the trustee, as expressed in the trust deed, shall have happened, sell the property conveyed by the deed, or so much thereof as

may be necessary, at public auction, having first given notice of such sale as prescribed in the following section.

Notably, there is nothing in this statute, or in the other statutes that appear in the same article of the Code, specifically identifying the legislative purpose for which it is intended to serve.

■ Before examining the specific language contained in this statute, however, we observe that "[t]he [L]egislature has provided for two types of real property foreclosure sales: judicial sales [under W. Va.Code § 55–12–1, *et seq.*], and trustee sales [under W. Va.Code § 38–1–1, *et seq.*]." *Fayette County Nat'l Bank v. Lilly*, 199 W.Va. 349, 354–55, 484 S.E.2d 232, 237–38 (1997) (footnotes omitted). Accordingly, in exploring the legislative intent underlying the foreclosure scheme presently before us, we must examine why the Legislature would knowingly establish two distinct methods of obtaining the same end. In this regard, we are guided by the maxim

> "[a] statute should be so read and applied as to make it accord with the spirit, purposes, and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law applicable to the subject-matter, whether constitutional, statutory, or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

Syl. pt. 2, *Bond v. Bond*, 215 W.Va. 22, 592 S.E.2d 801 (2003). Since it is unlikely that the Legislature would provide two separate statutory schemes to achieve the same result unless there was some reason therefor, we believe it is useful to identify the differences between the two types of foreclosure sales for real property. We previously have recognized this distinction thusly:

> In describing a central difference between the two types of real property foreclosure sales, one commentator has noted that "[t]he high cost attendant to the judicial

system and time lapse between the actual default and time of sale make the [judicial sale] less popular.... In contrast, [the trustee] sale is a 'streamlined more efficient version of judicial foreclosure.'"

*Lilly* at 355, 484 S.E.2d at 238 (quoting Pamela Giss, *An Efficient and Equitable Approach to Real Estate Foreclosure Sales: A Look at the New Hampshire Rule*, 40 St. Louis U.L.J. 929, 939 (1996) (additional citation omitted)). Based upon the foregoing, we believe it may be readily inferred that the legislative purpose for allowing trustee foreclosure is to provide a more time efficient and economical method of foreclosure. Having made this acknowledgment, we are reluctant to accept the Lucases' invitation to interpret W. Va.Code § 38–1–3 in a manner that complicates the trustee foreclosure process, as such a construction would be contrary to the legislative intent of the statute.

Turning to the specific statute at issue in this case, we look to its language in search of support for the Lucases' theory of requiring a trustee to ascertain the amount of debt prior to foreclosure. We find none. Rather, the duties of a trustee set out in the statute are rather sparse. First, the trustee must receive a communication from a creditor or surety indemnified by the deed that the debt has become due, a default has occurred, and that a foreclosure sale is demanded. This is evidenced by the following statutory language:

> The trustee in any trust deed given as security shall, whenever required by any creditor secured or any surety indemnified by the deed, or the assignee or personal representative of any such creditor or surety, *after the debt due* to such creditor or for which such surety may be liable *shall have become payable and default shall have been made in the payment thereof*, or any part thereof, by the grantor or other person owing such debt ... sell the property conveyed by the deed, or so much thereof as may be necessary, at public auction ....

W. Va.Code § 38–1–3 (emphasis added).

■ Plainly, there is nothing in the foregoing portion of the statute upon which to base

a requirement that a trustee ascertain the amount of the outstanding debt prior to foreclosing on the subject property. " 'A statute, or an administrative rule, may not, under the guise of "interpretation," be modified, revised, amended or rewritten.' Syllabus point 1, *Consumer Advocate Division of Public Service Commission v. Public Service Commission*, 182 W.Va. 152, 386 S.E.2d 650 (1989)." Syl. pt. 5, *Perito v. County of Brooke*, 215 W.Va. 178, 597 S.E.2d 311 (2004). The statute does, however, go on to additionally direct that, prior to a trustee sale at public auction, "all other conditions precedent to sale by the trustee, as expressed in the trust deed, shall have happened." W. Va.Code § 38-1-3. Thus, if a requirement for ascertaining the amount of debt was included in the trust deed itself, the trustee would be required to comply therewith. Absent such a specific requirement in the trust deed, however, there is simply no authority that would compel the trustee to make such a determination.

In support of their position that a trustee has a duty to proceed to foreclosure *only after* reviewing the account records to ascertain the actual amount due, the Lucases rely on this Court's decision in *Copelan v. Sohn*, 75 W.Va. 83, 82 S.E. 1016. The Lucases assert in their brief that, under *Copelan*, "when there is some kind of impediment to a fair sale ... the trustee is '*required* to invoke the assistance of a court of equity' when there is any doubt about the amount of debt secured." (Quoting *Copelan* at 90, 82 S.E. at 1018). We find the Lucases reliance on *Copelan* unpersuasive.[6]

The particular text to which the Lucases direct our attention is mere dicta, and therefore is not binding on this Court. Moreover, the related syllabus point in *Copelan*, which is the official authority for which the decision

stands, did not include the term "required." Rather, Syllabus point 9 of *Copelan* addressed an attorney for the creditor acting as trustee and stated:

An attorney for the creditor is not incompetent to act as trustee in a deed of trust securing a debt; but being then the agent of both parties he is bound, in executing the trust, to act honestly and impartially between the parties, and endeavor by proper notice and otherwise to obtain the best price for the property, and if necessary, to invoke the aid of a court of equity in doing so.

75 W.Va. 83, 82 S.E. 1016. Under the language of this syllabus point, it is left to the trustee to exercise his or her judgment in determining whether there is such an impediment to a proper execution of his or her duties as to require the assistance of a court.[7] This interpretation, we think, is further supported by this Court's holding in Syllabus point 8 of *Hartman v. Evans*, where the Court stated

Where there is, from any cause, an impediment to his making a fair and proper sale, (1) as where, from the fact of the deed of trust being one of long standing, or from any cause, the amount due and to be raised by a sale is uncertain; (2) where there are various deeds of trust or other incumbrances; (3) where the legal title is outstanding; (4) where there is a cloud upon the title,—*the trustee may*, of his own motion, apply to a court of equity to remove such impediment to a proper execution of the trust; and, if he should fail to do this, the party injured by his default has a right to make such application.

38 W.Va. 669, 18 S.E. 810 (emphasis added). *Accord Washington Nat'l Bldg. & Loan Ass'n v. Buser*, 61 W.Va. 590, 595, 57 S.E. 40, 42 (1907) ("[W]here the amount due and to

---

6. *Copelan* involved the 1891 version of the statute pertaining to sales under trust deeds, which may be found at chapter 77 of the Code of 1891. The portion of the 1891 version of the statute that relates to the particular topics covered in W. Va.Code § 38-1-3 are substantially the same as they currently appear in W. Va.Code § 38-1-3. The 1891 statute also includes additional topics that have now been separated into various sections of Article 1, Chapter 38 of the West Virginia Code. Because none of those additional provi-

sions are at issue in connection with the instant certified questions, we do not address them.

7. We note that "[t]he distinction between law and equity was abolished by Rule 2 of the West Virginia Rules of Civil Procedure[,] which provides that '[t]here shall be one form of action to be known as "civil action." ' " *Realmark Devs., Inc. v. Ranson*, 214 W.Va. 161, 164, 588 S.E.2d 150, 153 (2003).

be raised by sale is uncertain, the trustee, who is the agent of both parties and is bound to act impartially, *may* of his own motion apply to a court of equity for his own sake, as well as for the interests of those concerned, to remove the impediment and direct his conduct." (emphasis added)). *Cf.* Syl. pt. 8, *Pence v. Jamison*, 80 W.Va. 761, 94 S.E. 383 (1917) ("A trustee in a deed of trust is under no duty to seek the aid of a court of equity in the administration of the trust, unless it appear that there are prior liens of uncertain amount or whose validity has not been determined, or some other equity which would render uncertain the title of a purchaser at a sale made by such trustee.").

■ Based upon the foregoing analysis, we hold that the fiduciary duty owed by the trustee in a trust deed given as security in connection with a home mortgage loan does not require the trustee to review account records to ascertain the actual amount due prior to foreclosing under W. Va.Code § 38-1-3 (1923) (Repl. Vol. 1997).

■ We do pause briefly to note, however, that we find nothing in the relevant statute to expressly prohibit a trustee from obtaining information regarding the amounts due prior to foreclosure, or from seeking the aid of a court to resolve such an issue if, in the judgment of the trustee, such information is necessary to the proper execution of his or her duties. Indeed, even though not required, such action may be the more prudent course. *See Hartman v. Evans*, 38 W.Va. at 679, 18 S.E. at 814 ("In deeds of trust, especially those of long standing, where the amount due and to be raised by a sale is uncertain . . . where there are various deeds of trust or other incumbrances . . . where the legal title is outstanding . . . where there is a cloud upon the title . . . or in conclusion any impediment to a fair execution of the trust, the trustee, who is the agent of both parties, and bound to act impartially between them, *may and ought of his own motion* to apply to a court of equity for his own safety, as well as for the interest of those concerned, to remove the impediment and direct his conduct; and, if he should fail to do this, the party injured by his default has an unquestionable right to do so." (emphasis added)).

We similarly disagree with the Lucases' contention that the fiduciary duty of the trustee to both parties of a deed of trust includes the duty to consider legitimate objections of the grantor/homeowner to a foreclosure sale. Based upon the same principles of statutory construction discussed above, we find nothing in the language of W. Va.Code § 38-1-3 to suggest that a trustee has a duty to consider objections to the foreclosure sale. *See* Syl. pt. 5, *Perito v. County of Brooke*, 215 W.Va. 178, 597 S.E.2d 311 ("'A statute, or an administrative rule, may not, under the guise of "interpretation," be modified, revised, amended or rewritten.' Syllabus point 1, *Consumer Advocate Division of Public Service Commission v. Public Service Commission*, 182 W.Va. 152, 386 S.E.2d 650 (1989)."); Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.").

To the contrary, we previously have observed that a trustee does not have the power to resolve disputes between the grantor and grantee. In *Villers v. Wilson*, we stated that "[a] trust deed sale is normally conducted by a private individual, not a court. The trustee has limited powers, *which do not include the power to resolve controversies over debts owed by the secured creditor to the debtor.*" 172 W.Va. 111, 115, 304 S.E.2d 16, 19 (1983) (emphasis added) (citations omitted).

Instead, where the trust grantor wishes to challenge a foreclosure, the proper remedy is for the grantor to seek an injunction or to file an action to have the foreclosure sale set aside:

> [T]he lending institutions of this state have operated under the current trustee foreclosure scheme since the founding of this state. This scheme has always permitted a grantor to seek an independent action to either prevent a real property foreclosure from taking place, or to have a real property foreclosure sale set aside.

*Fayette County Nat'l Bank v. Lilly*, 199 W.Va. 349, 357, 484 S.E.2d 232, 240. *See also Dennison v. Jack*, 172 W.Va. 147, 157,

304 S.E.2d 300, 310 (1983) ("The grantor of a trust deed may seek a court injunction against a proposed trust deed foreclosure sale, *Wood v. The West Virginia Mortgage & Discount Corporation,* 99 W.Va. 117, 127 S.E. 917 (1925), *cf. Villers v. Wilson,* 172 W.Va. 111, 304 S.E.2d 16, (1983), or subsequent to a foreclosure sale, such a grantor may seek to have that sale set aside. *Moore v. Hamilton,* 151 W.Va. 784, 792, 155 S.E.2d 877, 882 (1967); Syl. pt. 2, *Corrothers v. Harris,* 23 W.Va. 177 (1883). In *Moore* and *Corrothers,* this Court stated that a sale under a trust deed will not be set aside unless for 'weighty reasons.' "). Thus it is for a court, and not the trustee, to address objections of the grantor/homeowner to a foreclosure sale.

■ In accordance with the foregoing analysis, we now hold that the trustee in a trust deed given as security in connection with a home mortgage loan may not consider a trust grantor's objections to the foreclosure sale. Instead, where the trust grantor wishes to challenge a foreclosure, the proper remedy is for the grantor to seek an injunction or to file an action to have the foreclosure sale set aside.

### B.  Reformulated Question Two

Does the principle that equity abhors a forfeiture require creditors in a deed of trust, or their representatives, to pursue remedies that are not set out in the deed of trust, or any relevant statutes, to attempt to cure a default prior to pursuing a foreclosure under W. Va.Code § 38–1–3?

The circuit court answered this question in the affirmative.

■ By virtue of the foregoing question, this Court is being asked to invoke the

principles of equity to amend a statute to add provisions that were not adopted by the Legislature in enacting the statute. We decline this invitation. We find nothing in the text of W. Va.Code § 38–1–3 that imposes upon a creditor, or its representative, the duty to pursue remedies other than foreclosure upon the default of the debtor.[8] In the absence of such a requirement being imposed by the Legislature, we may neither create nor enforce one. "[C]ourts cannot read into a statute that which is not within the intent of the Legislature, manifest from the statute itself." *State v. Abdella,* 139 W.Va. 428, 448, 82 S.E.2d 913, 924 (1954) (citations omitted).

■ We recognize that there have been instances in which this Court has interpreted a vague statute to include a requirement that, perhaps, was not readily apparent on the face of the statute in order to give effect to the intent of the Legislature. However, the present case certainly does not present such a circumstance. The relationship between debtors and creditors in the home mortgage industry is far too complex for this Court to endeavor to fashion a rule requiring a creditor to take additional steps before seeking foreclosure by the trustee to the deed of trust. We are ill-equipped to ascertain the potential impact of such an action.[9] This is, without question, an issue for the Legislature to undertake.

It is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten, or given a construction of which its words are not susceptible, or which is repugnant to its terms which may not be disregarded. 50 Am.Jur., Statutes, Section 228.

---

**8.**  W. Va.Code § 38–1–3 (1923) (Repl. Vol. 1997) states in full:

The trustee in any trust deed given as security shall, whenever required by any creditor secured or any surety indemnified by the deed, or the assignee or personal representative of any such creditor or surety, after the debt due to such creditor or for which such surety may be liable shall have become payable and default shall have been made in the payment thereof, or any part thereof, by the grantor or other person owing such debt, and if all other

conditions precedent to sale by the trustee, as expressed in the trust deed, shall have happened, sell the property conveyed by the deed, or so much thereof as may be necessary, at public auction, having first given notice of such sale as prescribed in the following section.

**9.**  For example, we have no method for obtaining necessary data to measure the impact, financial and otherwise, of imposing additional requirements on creditors prior to allowing foreclosure.

*State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars,* 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959). Accordingly, we hold that W. Va.Code § 38–1–3 (1923) (Repl. Vol. 1997) does not require creditors in a deed of trust, or their representatives, to pursue remedies that are not set out in the deed of trust or any relevant statute to attempt to cure a default prior to pursuing a foreclosure under W. Va.Code § 38–1–3. Based upon this holding, we answer the second reformulated question in the negative.

## V.

### CONCLUSION

For the reasons stated in the body of this opinion, we answer the two questions herein certified by the Circuit Court of Lincoln County, as reformulated, in the negative.

Certified questions answered.

Justice STARCHER concurs in part, dissents in part, and files separate opinion joined by Chief Justice ALBRIGHT.

STARCHER, J., concurring, in part, and dissenting, in part:

(Filed July 14, 2005)

I am in agreement with my colleagues in adopting Syllabus Point 1: a trustee to a deed of trust given as security for a home mortgage loan absolutely owes a fiduciary duty to all of the signatories of the trust deed. This fiduciary duty is not a recent concept, but actually has a centuries-old basis that can be traced back as far as 1876 in West Virginia's common law jurisprudence.[1] As this Court stated:

> No general principles are better settled than, a trustee is the agent of both parties and must consult impartially the interests of each.... He is supposed to be the common friend and agent of both parties impartial and disinterested, whose duty it

is to act justly and discretely towards those in interest.

*Spencer and Miller v. Lee,* 19 W.Va. 179, 187–88 (1881). As Justice Cardozo noted, the fiduciary duty of a trustee carries a responsibility to behave with "[n]ot honesty alone, but the punctilio of an honor the most sensitive."[2]

I dissent, however, to the rest of the opinion. I do so because the questions certified from the circuit court concerned the breadth of a trustee's duties under the common law, but the majority opinion reformulated those questions so as to only construe *W.Va.Code,* 38–1–3. The result is that, while the majority opinion contains numerous scholarly citations to the centuries-old *common law* duties of a trustee, the opinion ignores these citations in reaching its ultimate, and wrong, conclusion: A trustee only has the duties defined by *statute* and no more.

For at least 128 years, this Court has utilized the common law to empower trustees to deeds of trust to "do the right thing." The Court, not the Legislature, required trustees to approach each deed of trust with an open mind and do the fair thing for both the lender and the landowner.

But the majority opinion's holding that trustees *can only do those acts contained in W.Va.Code,* 38–1–3, and no others, overrules centuries of common law, emasculates trustees and makes them virtual automatons working at the sole behest of lenders. Furthermore, *W.Va.Code,* 38–1–3 is a skeletal statute. It has no provisions setting forth what a creditor has to transmit to the trustee to initiate a foreclosure. It has no verification requirements. It also has no process for the borrower to raise legitimate objections. As the majority opinion correctly notes, "the present statute governing sales under trust deeds ... may well be inadequate to address the complexities of the modern state of the home loan mortgage industry as it relates to trust deed transactions."

---

1. *See* Syllabus, *Anchor Stove Works v. Gray,* 9 W.Va. 469 (1876) (trustee to a deed of trust must act "in such a way as would promote the interest of all, and not be prejudicial to the rights of either party[.]"). *See also, Machir v. Sehon,* 14 W.Va. 777 (1879) (interpreting the duties of a trustee under the 1870 version of *W.Va.Code,* 38–

1–3, the statute interpreted by the majority opinion).

2. *Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545 (1928).

I cannot so blithely turn my back on the common law in favor of a hollow statute which even the majority admits is inadequate.

## I.

### Deeds of Trust are Historical Developments of Courts through the Common Law Not Legislatures through Statutes

The majority opinion forgets that the concepts of a "trustee" and a "deed of trust" do not have their roots in statutes. Instead, the idea of a trustee was born in ancient courts of equity nearly 500 years ago. But it was not until the 1800s that trustees were routinely involved as impartial, third-party intermediaries in mortgages and deeds of trust. How trustees came to be involved with mortgages and deeds of trust is a complex and tangled history, built upon conflicts between lenders and landowners who used their property as collateral for loans. "Its development in modern times bears the scars of the never-ending struggle between debtor and creditor." [3] But the struggle was borne out, not in legislatures, but in the courtroom.

A trustee is nothing more than a third-party middleman who holds and manages property, which belongs to one person, for the benefit of another person. The trustee mechanism was born half a millennium ago in English courts of equity as a fair and fast mechanism to convey and manage interests in real and personal property, and is a mechanism that remains with us to this day. But the use of the trustee mechanism in the context of loans and mortgage deeds did not begin in America until approximately 200 years ago.

In Middle English times, money systems were weak and credit information was primitive. Laws against usury prohibited lenders from charging interest on loans. Land was a large part of the nation's wealth, and people turned to land as security for loans. To bypass the usury laws and obtain credit, landowners would give lenders a mortgage deed for their land in exchange for a loan. The lender took immediate possession of the debtor's land, and would collect the rents and profits from the land—instead of collecting interest on the loan—until the loan was paid. At some future date established in the mortgage deed the landowner would repay the principal of the loan, the deed would (hopefully) be returned, and the lender would (hopefully) allow the landowner to reenter the land. But not always; unfortunately, many landowners were bilked out of their property by unscrupulous lenders. And, of course, if payment was not made by the maturity date of the loan, then the lender's ownership of the land became absolute.

Inevitably, landowners and lenders hired lawyers and turned to the court system for a remedy. To prevent unfair behavior by lenders, in the sixteenth century courts of equity were asked by landowners to compel lenders to convey the land back to the landowners. The English courts of Chancery began to recognize what was called the "equity of redemption," and the landowner was allowed, even after the maturity date of the loan, to repay the lender and get his land back.

Over time, lenders began a custom of allowing landowners to retain possession of their mortgaged land until there was a default on the loan. When the landowner defaulted, courts of equity were again asked to respond, and developed the system of equitable foreclosure. The landowner's failure to repay the loan no longer resulted in an automatic forfeiture of their ownership interest in the land to the lender. Instead, the lender would have a right to petition a court for a decree of foreclosure, the granting of which would bar the landowner's right to the equity of redemption. The lender would thereby recoup his investment by taking title and possession of the property if the landowner failed to repay the loan within a time fixed by the court. The equitable foreclosure system was slow but fair: the lender could petition the court to give ownership of the land to the lender to repay the loan, but the landowner would have a chance to remedy the default or explain the default when the lender had not behaved reasonably.

By the end of the seventeenth century, mortgages had essentially evolved into a

---

3.  Lawrence M. Friedman, *A History of American* *Law* 246 (2d. Ed. 1985).

492

cumbersome, inefficient mechanism more akin to a lien rather than a deed of an interest in property. Both lenders and landowners suffered. Lenders could not take possession of the land in case of a default without first dispensing with the landowner's right to the equity of redemption by pursuing a decree of foreclosure. Conversely, little by little a custom developed such that lenders would allow landowners to retain possession of their land; the end result was that lenders could only seize possession of the land during the loan through an action at law for ejectment. If after default a landowner offered to repay the lender the loan amount and was refused, the landowner had to bring a special bill in equity for redemption; unfortunately, the landowner could not assert this equitable right as a defense to an action at law, such as to an action for ejectment brought by the lender.

Furthermore, at the end of the seventeenth century the most common type of foreclosure in England was the "strict foreclosure," whereby the lender, without a sale of the land, was decreed the full owner of the property. As one commentator noted, "[t]he action of strict foreclosure entailed a resort to Chancery proceedings which were notoriously protracted and expensive." [4] Only in limited cases would courts decree that the land be sold at a public auction, and the lender could not bid on the property. In other words, lenders had only two options: either possession and title to the property, or if the court deemed it necessary, the proceeds of the sale of the property to a third party and a claim for the deficiency.

As the English common law was transplanted to the American colonies, it was modified to reflect the needs of settlors for improved, more efficient means of financing growth. Mortgages were used in the colonies, but the remedy of foreclosure was modified by the courts to meet domestic needs. As time went on, strict foreclosure was supplanted by foreclosure followed by a judicial or public sale, and by the 1830s strict foreclosure had virtually vanished from the American legal landscape. Further, American courts allowed the lenders to bid on the property at the judicially-ordered public auction, and to later make a claim against the debtor for the difference between the auction sale price and the balance of the debt due.

Lenders, however, still wanted to bypass the delays and costs associated with lawsuits to force a judicial sale of mortgaged property. Lenders took the next step in history, and with the help of lawyers added contractual language to mortgages by which landowners waived their equitable rights of redemption and right to a judicially-ordered sale of the land. When signed by the landowner, the language expressly gave the lender the authority to seize and privately sell the property without court action, and without the equity of redemption. Unfortunately, this private sale process, which is still used in many states today, is open to many abuses:

> [F]or example, the mortgagee may not make a good faith effort to realize any more than the amount of the debt, despite the fact that the mortgagor has considerable equity in the property; the mortgagee may foreclose through the power of sale for only a technical default, which a court might overlook; the mortgagee may foreclose because of factual errors, having failed to secure the proof of default that would be necessary in judicial foreclosure; the mortgagee may sell the property after a default that is the product of fraudulent or near-usurious terms in the mortgage contract, terms that a court would refuse to enforce in judicial foreclosure. The efficiency and savings that are possible through the use of power of sale foreclosures are, therefore, at least partially offset by the potential for injustice that

4. Robert H. Skilton, "Developments in Mortgage Law and Practice," 17 Temple U.L.Q. 315, 317 (1943). *See also* 4 Kent Commentaries 139 (1st Ed. 1830) ("[T]he expense, trouble, formality and delay of foreclosure by a bill in equity. The vexatious delay which accrues upon foreclosure, arises, not only from the difficulty of making all proper persons parties, but chiefly from the power that Chancery assumes to enlarge the time for redemption on a bill to foreclosure. There are cases in which the time has been enlarged, and the sale postponed, again and again, from six months to six months, to the great annoyance of the mortgagee.")

seems to be inherent in nonjudicial remedies.

Comment, "Power of Sale Foreclosure after *Fuentes*," 40 U.Chi.L.Rev. 206, 212 (1974).

The common-law private power of sale mechanism predates the *United States Constitution*, as do its abuses. But it was not until the early 1800s that the mechanism became popular in the United States. With this growing popularity, states began enacting statutes establishing conditions of advertisement and sale that had to be met before the private sale power could be validly exercised. Many courts, however, viewed private powers of sale "with jealously, as an invasion of their sphere"[5] and began imposing limits. For example, courts concluded that lenders were not permitted to buy the property at the sale.

Some southern states—including our mother state of Virginia—took an even more extreme view, and concluded outright that a private power of sale given to a lender was wholly invalid. *See Taylor's Adm'rs v. Chowning*, 3 Leigh 654, 30 Va. 654 (1832) ("[I]f a mortgage be made to secure a debt, and power be thereby given to the mortgagee to sell the subject to pay the debt, the mortgagee cannot execute the power, the character of creditor and trustee, in such case, being incompatible[.]"). These courts held that no one could grant a private power of sale to a mortgagee-lender.

It was precisely because of the confluence of these historical events that lenders and landowners, through courts of equity, merged the common-law concepts of trustees, mortgages and private powers of sale, and thereby created deeds of trust as a fair tool to secure debts. A trustee to a deed of trust has, therefore, rights and duties based upon centuries of precedent in equity. Such a trustee is an intermediary who must act to protect both the lender's investment and the landowner's opportunity to remedy a default

when the lender is behaving unreasonably or usuriously.

I concede that my summary of several centuries of common law is exceptionally brief, but this history teaches us two principles that are relevant to the instant case but that were quickly forgotten by the majority opinion: this "mortgage" system involving trustees developed over the years primarily because of abuses by lenders; and the evolution occurred in courts of equity, not through legislative action.

## II.

### *The Majority Opinion Ignores the Common Law*

What bothers me about the majority opinion is that it gives lip service to common-law precedents, without understanding or acknowledging their historical context. The majority opinion makes numerous scholarly references to the fiduciary duties of trustees in a deed of trust from West Virginia's common law. Citing cases from as far back as 1893, the majority opinion notes that a trustee must "look to the rights and interests of the trust-debtor, as well as to those of the trust-creditor, in-as-much as he is the agent of both parties, and bound to act impartially, between them."[6] The majority opinion goes on to dismiss as "mere dicta" this Court's suggestion in 1916 that a trustee is "required" to take certain actions to protect the rights of one party to a deed of trust.[7] Instead, the majority opinion opts to note a case from 1893 in suggesting that a trustee "may and ought of his own motion" act to protect a party.[8]

But the majority opinion's bookish excursion into the common law has nothing to do with the majority opinion's final holding. The majority opinion states that because "we find nothing in the language of W.Va.Code § 38–1–3 to suggest that a trustee has a duty

---

**5.** Skilton, 17 Temple U.L.Q. at 324.

**6.** Syllabus Point 7, *Hartman v. Evans*, 38 W.Va. 669, 18 S.E. 810 (1893).

**7.** *See* 217 W.Va. at 487, 618 S.E.2d at 496, *citing Copelan v. Sohn*, 75 W.Va. 83, 82 S.E. 1016 (1912).

**8.** *See* 217 W.Va. at 487, 618 S.E.2d at 496, *citing Hartman v. Evans*, 38 W.Va. 669, 679, 18 S.E. 810, 814 (1893).

to consider objections to the foreclosure sale," [9] then a trustee can and must ignore a party's objections and proceed with a sale of the property. In the eyes of the majority opinion, a trustee is powerless to consider a party's legitimate objections. In other words, if the duty to consider an objection isn't set out in a statute, then there is no duty. Forget five centuries of application of the common law to facts; the majority opinion says that because the Legislature has spoken on this topic, the common law has ceased to exist.

The majority opinion is, therefore, a classic example of "dual personalities." On the one hand, quoting the common law, it says trustees "may and ought" to do things to remove impediments to a fair sale. On the other hand, it says trustees don't have to remove impediments to a fair sale because the statute doesn't explicitly give them the power to do so. If practitioners of the law come away from the majority opinion confused about the true responsibilities of a trustee, I wouldn't blame them. ·

I have read the statute at hand, *W.Va. Code*, 38–1–3, and common-law cases interpreting that statute stretching back to 1879. I have far more faith in the sensibilities of trustees than the majority opinion, and believe this Court has amply set forth the powers and duties of trustees in the deed of trust context, in general, and in the context of *W.Va.Code*, 38–1–3, in particular. Put simply, I do not believe that *W.Va.Code*, 38–1–3 obliterated the common law responsibilities of a trustee to ensure that a foreclosure sale is conducted properly and fairly, for both the lender and the landowner.

*W.Va.Code*, 38–1–3, parsed down into its constituent parts, says this:

1. The trustee in any trust deed given as security by a grantor,

2. Shall:

A. Whenever required by any creditor secured by the deed,

AND

B. After the debt due to such creditor:

(i). Shall have become payable by the grantor and

(ii) Default shall have been made by the grantor

(a) in the payment thereof, or

(b) any part thereof,

AND

C. If all other conditions precedent to sale by the trustee, as expressed in the trust deed, shall have happened,

3. Sell the property conveyed by the deed, or so much thereof as may be necessary, at public auction, having first given notice of such sale.

The majority opinion gives the statute a minimalist construction, construing it to read "the trustee shall, whenever required by any creditor, sell the property conveyed by the deed" and leaves it at that. Unlike the majority opinion, when I read this statute, I see that it carries a lot of hidden baggage for a trustee. The statute doesn't just say the property has to be sold the moment a creditor demands a sale; it also says that, before there is a sale, there must be evidence that (a) the debt to the creditor is payable, and (b) the debtor has made a default in payment, in whole or in part. The statute also doesn't say that the entire property must be sold; it says the trustee must sell "so much thereof as may be necessary," which tells me that the trustee must ascertain how much is owed by the debtor and whether the property can be sold off in smaller parcels.

Now, what should happen if a trustee knows that a creditor is pretty sleazy and "loose with the truth" when it says a debtor is in default in paying a mortgage, [10] or a debtor notifies the trustee that the debt has been satisfied, or notifies the trustee that there has been no default in payment? The majority opinion acts like this is a question of first impression under *W.Va.Code*, 38–1–3, and finds that the trustee has one duty: sell the property, regardless of the facts. If the ejected landowner has a problem with the

---

9. 217 W.Va. at 488, 618 S.E.2d at 497.

10. The brief of the Lucases intimates quite strongly that Fairbanks Capital is about as sleazy as they come in the mortgage lending world.

sale, they can file a lawsuit to set aside the sale or stop the sale.

However, this is not question of first impression. The Court examined just such a situation in *Machir v. Sehon*, 14 W.Va. 777 (1879). A landowner, Joseph S. Machir, essentially borrowed $1,875.00 in 1868, payable within two years without interest, from William H. Machir, and secured the debt with a deed of trust to land in Mason County. Eight years later, in 1876, William demanded that the trustee sell the land because the debt had never been repaid. The landowner (actually, his wife because Joseph had died) insisted that the debt had been fully paid off and discharged. Sitting between the two parties was the trustee. He refused William's command that the land be sold, and demanded that William produce documentation showing that the debt had not been paid. William pointed to the deed of trust as evidence of the debt. The trustee, unsure as to the existence of a debt, again refused to sell the land.

William then went to circuit court and sought an order to remove the trustee because of his refusal to act. The circuit court—like the majority opinion in the instant case—found that the trustee had no choice but to sell the property upon the demand of a creditor. The circuit court therefore removed the trustee from his position, and another person was appointed to sell the property. On appeal, however, the circuit court was reversed and the trustee was reinstated.

This Court began its opinion by looking to the common law of trusts, and found that a trustee in a deed of trust must act "as the agent of all parties in such a way as would promote the interests of all, and not be prejudicial to the rights of either party[.]"[11] When a trustee to a deed of trust encounters an issue that interferes with the fair adminis-

tration of the trust—such that the rights of either party will be prejudiced—then at common law the trustee is empowered to do whatever it takes to ensure a fair outcome. As the Court stated,

> A trustee in a deed of trust is the agent for both parties, and bound to act impartially between them; nor ought he to permit the urgency of the creditor to force the sale under circumstances injurious to the debtor at an inadequate price. He is 'bound to bring the estate to the hammer,' as has been said by Lord Eldon, 'under every possible advantage to his *cestui que trust*,' and he should use all reasonable diligence to obtain the best price. He may and ought of his own motion, to apply to a court of equity to remove impediments to a fair execution of his trust; to remove any cloud hanging over the title; *and to adjust accounts if necessary, in order to ascertain the actual debts which ought to be raised by the sale or the amount of prior encumbrances.* And he will be justified in delaying for these preliminary purposes the sale of the property, until such resort may be had to a court of equity. If he should fail however to do this, the party injured by his default has an unquestionable right to do it; whether such party be the creditor secured by the deed, or a subsequent incumbrancer or the debtor himself or his assigns.

14 W.Va. at 783 (emphasis in original) (with citations omitted). In other words, at common law a trustee to a deed of trust has the power to delay selling the property, and to consider the objections of a party (including objections regarding the actual amount of the debt due).

Like the instant case, the Court in *Machir v. Sehon* was asked to take the next step and determine the effect that *W.Va.Code*, 38–1–3 had upon these common-law duties.[12] Unlike

11. *Machir*, 14 W.Va. at 783, *quoting* Syllabus, *Anchor Stove Works v. Gray*, 9 W.Va. 469 (1876).

12. The Court noted that on February 28, 1870, the Legislature had amended and reenacted section 6, chapter 72 of the Code of West Virginia to read as follows:

6. The trustee in any such deed [of trust], except so far as may be therein otherwise

provided, shall, whenever required by any creditor secured or any surety indemnified by the deed, or the personal representative of any such creditor or surety, after the debt due to such creditor, or for which such surety may be liable, shall have become payable and default shall have been made in the payment thereof or any part thereof by the grantor, sell the property conveyed by the deed, or so much

the instant case, the Court found that *W.Va. Code*, 38–1–3 merely set out a general rule for trustees to a deed of trust. The Court found that the statute acted in *conjunction* with the common law, not as a *replacement* for the common law. The Court said:

> The object of this [ ] section seems to be to provide a general rule for the government of trustees, except where it is otherwise provided in the deed of trust. From this [ ] section I think it may be fairly deduced: 1st. That the trustee should not sell unless default be made in payment; 2d. If the debt secured has been paid, he should not sell.
>
> … And if the debt has not been paid in full, but it is necessary that there should be an adjustment of accounts in order to ascertain the actual debt which ought to be raised by the sale, or the amount of prior incumberances [sic], or where the creditor named in the deed of trust has assigned the debt secured, or part thereof, and the debt or part thereof has been paid to the assignee by the debtor and there is controversy as to such assignment and the validity of such payment under such circumstances as to render it doubtful whether the debt has in fact been properly paid in whole or part to such assignee, and who is entitled to the debt, the trustee ought not proceed to sell, until these matters are adjudicated and settled; and he is justifiable in delaying a sale for this preliminary purpose.

14 W.Va. at 785–86. The Court then went on to make clear that the statute preserves a trustee's common-law fiduciary discretion to do what is right by all parties. This Court found, in 1879, that neither the common law nor *W.Va.Code*, 38–1–3 mandates that a trustee apply to a court for a declaratory judgment every time a creditor or a debtor raises an objection to a foreclosure. Instead, under the common law and the statute, the trustee must do what the trustee sees is necessary to fairly execute the trust.

> I do not mean to say, that it is the absolute duty of the trustee of his own motion to apply to a court of equity in all such cases to remove such impediments to a fair execution of his trust; for in some cases the party, who may have or claim to have an interest in the subject of the trust and its execution by a sale thereunder, and who demands a sale to be made by the trustee, may be insolvent, or the demand of sale by such person may be made simply for frivolous and vexatious purposes without any real propriety for a sale to be made. What I do mean to say is, that where such impediments exist to a fair execution of the trust, the trustee ought not to proceed to sell the property, until such impediments are removed, or he is authorized so to do by a court of equity.

14 W.Va. at 786–87.

The majority opinion holds that a trustee to a deed of trust not only has no duty, but even has no right, to consider legitimate objections by a debtor/homeowner to a foreclosure sale, because that duty is not included in *W.Va.Code*, 38–1–3. Instead, the majority opinion holds that only the debtor homeowner has a right "to seek an injunction or to file an action to have the foreclosure sale set aside."[13] That holding is absolutely contrary to the common law, to the language of *W.Va.Code*, 38–1–3, and this Court's study of the statute in 1879 in *Machir v. Sehon.*

I firmly believe that under the common law, even after the enactment of *W.Va.Code*, 38–1–3, trustees have the right and duty to consider the legitimate objections of the parties to the trust, and to make inquiry where necessary. By enacting *W.Va.Code*, 38–1–3, the Legislature intended to supplement, not supplant, the common law, as this Court has made clear since 1879.

I therefore dissent to the majority opinion's reformulation of the certified questions. By reformulating the questions to only discuss *W.Va.Code*, 38–1–3, the majority opinion has failed to inform trustees of their rights and duties under a deed of trust.

---

thereof as may be necessary, at public auction for cash, after having given reasonable notice of the time and place of sale. . . .

**13.** 217 W.Va. at 488–489, 618 S.E.2d at 497–498.

Furthermore, I am authorized to state that Chief Justice ALBRIGHT joins me in this separate opinion.